## ELLISON ET AL. *v.* GANIARD, TRUSTEE.

[No. 20,835. Filed December 14, 1906.]

1. APPEAL AND ERROR.—*Briefs.*—*Compliance with Rules.*—Substantial compliance with the Supreme Court rules in the preparation of briefs is all that is required. p. 481.

2. SAME. — *New Trial.* — *"Findings."* — *Words and Phrases.* — The use of the word "findings" instead of "decision" in the

motion for a new trial is a sufficient compliance with subd. 6, §568 Burns 1901, §559 R. S. 1881, providing reasons for which new trials may be granted. p. 481.

3. TRUSTS.—*Writings.*—*Deeds.*—A deed of land by a mother to a son accompanied by a written appointment of him as trustee to sell the lands conveyed and to distribute the proceeds equally to her children, which appointment was accepted by such son in writing, constitutes an express trust under §3391 Burns 1901, §2969 R. S. 1881. p. 485.

4. SAME.—*Powers.*—*Deeds.*—*Title Conveyed.*—A deed to a trustee, directing him to convey the property and distribute the proceeds to determinable beneficiaries, is sufficient to authorize him to transmit a fee-simple title to his grantee. p. 487.

5. SAME.—*Deeds.*—*Contracts.*—*Recording.*—The execution of a deed conveying certain lands, together with a separate writing appointing the grantee as a trustee to sell the same and distribute the proceeds to determinable beneficiaries, constitutes, as between the parties, an express trust; and the failure to record such separate writing did not impair the trust. p. 487.

6. SAME.—*Trustees.*—*Bankruptcy of.*—*Effect on Trust Property.* —*Execution.*—Property held in trust by a bankrupt, not being liable to execution for such bankrupt's debts, does not pass to such bankrupt's trustee under the bankruptcy law of 1898 (30 Stat., pp. 544, 565, §70, U. S. Comp. Stat., p. 3451). p. 488.

7. BANKRUPTCY. — *Trustees.* — *Title to Property.* — *Equities.* — Trustees in bankruptcy take their bankrupts' titles, which are unaffected by fraud, burdened with all the equities to which such titles were subject in the hands of such bankrupts. p. 488.

8. DEEDS.—*Contemporaneous Contracts.*—*Construction.*—*Trusts.* —*Bankruptcy.* — *Quieting Title.* — A deed absolute upon its face, when construed with a contemporaneous writing executed with such deed, which creates the grantee a trustee of the granted property and directs a sale thereof and a distribution of the proceeds to certain determinable beneficiaries, passes no beneficial title to such grantee; and his trustee in bankruptcy cannot maintain a suit thereon to quiet title. p. 489.

9. BANKRUPTCY.—*Title.*—*Unrecorded Trust.*—*Trustee's Right to Quiet Title.*—*Estoppel in Pais.*—A trustee in bankruptcy has no right to a decree quieting his title to lands held in trust by the bankrupt by an unrecorded instrument, the deed to such bankrupt on record appearing absolute, because of an estoppel *in pais,* where but two out of 800 of the creditors relied upon the bankrupt's ownership of such property when they became creditors. p. 489.

10.   ESTOPPEL. — *Nature of.* — *Bankruptcy.*—*Trustee.*—Where a creditor dealt with a bankrupt, relying upon the bankrupt's ownership of property held by him under a deed absolute upon its face, such property in reality being held in trust, such creditor, to avail himself of an estoppel, must bring a suit to subject such land to the payment of his claim, the trustee in bankruptcy being unable to assert such an estoppel.   p. 490.

From Lagrange Circuit Court; *R. S. Robertson,* Special Judge.

Suit by Sidney K. Ganiard, as trustee of Rollin Ellison, a bankrupt, against Alice H. Ellison and others.   From a decree for plaintiff, defendants appeal.   Transferred from the Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.   *Reversed.*

*O. L. Ballou* and *T. E. Ellison,* for appellants.
*John W. Hanan* and *Barrett & Morris,* for appellee.

JORDAN, J.—Appellee, as trustee of Rollin Ellison, a bankrupt, commenced this suit against Susan M. Ellison to quiet title to certain real estate situated in Lagrange county, Indiana.   After the commencement of the suit, appellants herein, Thomas E. Ellison, Susan B. Williams, Mary L. Bastian, Alice H. Ellison, Ellen M. Fountain, and Emma F. Casebeer, petitioned the court to be made defendants, averring in the petition that they were the owners of the undivided six-sevenths of the lands in controversy, and that the plaintiff was, as trustee of Rollin Ellison, the owner of the remaining seventh.   The court granted the petition and ordered that the petitioners be made defendants to the suit.

Susan M. Ellison filed an answer of disclaimer, which, omitting the formal parts, is in these words:  "Comes now Susan M. Ellison, the defendant in the above entitled cause, and for answer to plaintiff's complaint disclaims having any interest in or title to said property.   She further says that prior to the commencement of this suit, to wit, on January 10, 1899, she was the owner of all said

real estate; that on that day she conveyed the same to Rollin Ellison as trustee; that said Rollin Ellison as such trustee was, whenever a suitable purchaser was found therefor, to sell and convey the same to such purchaser, taking back such securities as trustee as would evidence the unpaid part of the purchase price thereof; that said Rollin Ellison was, by the terms of said trust, to divide the proceeds among this defendant's children in equal parts; that this defendant's children, who were and are entitled to receive the proceeds derived from the sale of said property, are [setting out the names of appellants herein], and they became at that time the equitable owners thereof. Wherefore she demands judgment for costs."

Subsequently appellee filed an amended complaint, making appellants party defendants thereto, in compliance with the order of the court hereinbefore mentioned. Therein he alleged that he was the duly appointed, qualified and acting trustee in the matter of Rollin Ellison, a bankrupt, in the proceedings in bankruptcy in the United States district court in and for the district of Indiana; that on September 18, 1903, said Ellison was by said court, on his voluntary petition, duly adjudged a bankrupt; that at and prior to the time that said Ellison was adjudged a bankrupt he was and ever since has been, and now is, the owner in fee simple of the following described real estate in Lagrange county, Indiana (here follows the description of the lands and lots in controversy); that at the time said Ellison was adjudged a bankrupt said real estate was, and still is, subject to the payment of the debts of said bankrupt, Rollin Ellison, and that the same is liable to be sold by plaintiff, as such trustee, to make assets for the payment of the debts, and that it is necessary for the plaintiff to sell the lands in question for said purpose. It is further alleged that the defendants to the suit claim an interest in said real estate adverse to the plaintiff's rights therein, which claim is unfounded and a cloud on plaintiff's title; that

plaintiff has been by the United States district court in bankruptcy duly authorized to institute and carry on this suit. Wherefore he prays that the defendants' claim to said real estate be declared null and void, and plaintiff's title to the same be quieted.

The defendants, other than Susan M. Ellison, filed an answer to the amended complaint, which is denominated a partial answer. This answer may be said to be in the nature of a special or argumentative denial. Therein the defendants admit that Rollin Ellison was adjudged a bankrupt, as alleged in the complaint, and that appellee was appointed trustee of his estate. They further aver that said Rollin, in his schedule of the property which he filed, did not claim to own the real estate described in the complaint, but claimed that he held the same in trust; that the only title that said Rollin ever held in and to said property was by virtue of two deeds executed by Susan M. Ellison at a time when she was the owner of the property; that by said deeds she conveyed to said Rollin, for a nominal consideration, the following real estate situated in Lagrange county, Indiana (describing it), being the lands set out in the complaint; that at the time she executed said deeds she also executed in writing a declaration of trust by which he (Rollin) took title in trust to said property for the purpose of dividing the value thereof in equal parts among her children, he being one of her said children; that under said trust so declared he was granted authority to sell and convey said property as soon as he could find purchasers therefor, and was invested with power to take back to himself as trustee proper securities for the unpaid portion of the purchase money, which was to be divided among said defendants as her children; that said Rollin accepted said trust and agreed to carry the same out as directed; that Susan M. retained possession of the property, used and occupied the same, collected rents, made improvements thereon, and paid taxes; that one of said

tracts of land was sold to one Stevens, and Mrs. Ellison took and received the proceeds of such sale; and another small tract was sold to one Lovell, and she took and received the proceeds of such sale, all with the knowledge and consent of these defendants and of said Rollin Ellison; that on December 11, 1900, said Susan M. distributed among these defendants and beneficiaries the sum of $700, derived by her from the sales and rentals of said property. It is further averred in said answer that on October 18, 1902, Rollin Ellison sold one of the tracts of land to William Appleman for the sum of $800, and received therefor in his own name notes and a mortgage to secure that amount, and said notes and mortgage have passed into the hands of the plaintiff as trustee in bankruptcy, and the same are now in his hands, or have been collected by him and the funds thereby derived are in his possession. It is further averred that by the adjudication in bankruptcy said trust was terminated and the same cannot be further carried out or performed by said Rollin; that one-seventh of said property and the proceeds derived from the sale thereof belong to and are the property of said Rollin, and that each defendant is the owner of one-seventh, and all, jointly, own an undivided six-sevenths thereof; that a fair and equitable division cannot be made of said property so that the same can be divided between the plaintiff and these defendants, and that an accounting should be had and a commissioner should be appointed to take possession of said property and sell the same and divide the proceeds among and between the plaintiff and these defendants.

Appellee successfully moved to strike out all that part of the answer which related to the sale and conveyance of the tract of land to Appleman and the receipt by the trustee of the mortgage for $800, and the collection of the proceeds thereof. Appellee filed a reply to this answer in two paragraphs. First, the general denial. By the second paragraph he alleges that the defendants "are estopped to

assert title to the lands described in their answer, or to
obtain or secure the relief therein demanded, because said
Rollin Ellison was, on September 18, 1903, and for many
years prior thereto had been, engaged in the business of a
private banker in the town of Lagrange, Indiana; that on
the day aforesaid said Ellison filed, in the district court of
the United States for the district of Indiana, his voluntary
petition, praying to be adjudged a bankrupt, and on said
day he was adjudged a bankrupt by said court; that there-
after, on October —, 1903, the plaintiff was duly ap-
pointed and qualified as trustee of said bankrupt, and still
is acting as trustee, and as such is the owner of all of the
property, real and personal, of said Rollin Ellison, for the
benefit of all of his creditors, and of the property described
in the answer of Susan B. Williams, Mary L. Bastian,
Alice H. Ellison, Ellen M. Fountain, Emma F. Casebeer
and Thomas E. Ellison;" that on January 10, 1899, while
said Rollin Ellison was so engaged in the business of a
private banker at the town aforesaid, Susan M. Ellison,
who was his mother, and then the owner in fee of the lands
described in the answer, conveyed the same to him by a
general warranty deed; that this deed was executed and
acknowledged by said Susan M. to Rollin, and was there-
after, on the —— day of ———, duly recorded in the
record of deeds in the recorder's office of Lagrange county,
Indiana, with the knowledge and consent of the defend-
ants; that the latter knowingly permitted this deed to be
taken in the name of said Rollin and the title in his name
to be so recorded and said deed to remain on the records of
Lagrange county in his name; that they knowingly per-
mitted the deed so to stand and remain of record in the
name of Rollin Ellison for the purpose of giving him in-
creased credit and financial standing in the community in
which he was so conducting his business of a private
banker; that among the customers of his bank many knew
at and prior to the time of making deposits therein that

the title to said lands was in the name of Rollin on the public records of the county, but they had no knowledge, information, or notice of the declaration of trust executed by Susan M., or that the defendants had or claimed any title to or interest in said lots and lands until after the adjudication in bankruptcy of Rollin Ellison; that at and prior to the time of said adjudication there were more than two hundred customers of Rollin Ellison, who, at divers times, deposited sums of money with him as a banker, which deposits in the aggregate at the time of said adjudication in bankruptcy amounted to over $300,000, in which amount he was indebted to said creditors and customers of his bank; that his property and assets at that time were wholly insufficient to pay said creditors, and were not sufficient to pay more than thirty or forty cents on the dollar of his indebtedness; that many of his creditors, knowing of the execution of said deed and that the title to said lots and lands stood in his name upon the public records of the county and believing him to be the owner thereof and relying on his ownership thereof, extended to him credit from time to time and made deposits in his bank in divers and various sums and permitted the same to remain in his said bank until his adjudication in bankruptcy.

It further alleges that Hartman D. Shoup, during the time said real estate stood upon the records in the name of said Rollin, made an examination of the records of the deeds and ascertained thereby that the real estate in controversy was still in the name of Rollin Ellison, and he believed said Ellison owned said real estate, and, not knowing of any interest, right, or title of the defendants therein by reason of any declaration of trust, and relying upon such ownership, on November 17, 1900, deposited in said bank $1,694, and thereafter made other deposits, etc. Other allegations disclose the insolvency of said Rollin, his adjudication in bankrupcty, and it is alleged that said Shoup has filed his claim against the estate of Rollin Elli-

son and has been allowed thereon the sum of $894, and that only ten per cent of the amount so allowed has been paid. It is alleged that, at the time the deposit of $1,694 was made, the real estate described in the answer was, and is now, of the value of $16,000, and, if the defendants are declared the owners thereof, said Shoup and other creditors of said Rollin will be deprived of the payment of their claims, "and his and their *pro rata* share thereof as creditors of said Rollin Ellison." It is further alleged that defendants, knowing that the deed had been executed to said Rollin and recorded as aforesaid, and that the title to the lands appearing upon the records in his name would give him increased financial standing and credit among the public generally, and especially among his creditors and depositors in said bank, permitted the title to remain in him from the time of the execution and of the recording of said deed until his adjudication in bankruptcy; that they kept silent said declaration of trust and gave out no notice or information concerning the same, either to the public or to said depositors and creditors of said Rollin Ellison. The plaintiff, therefore, avers that, by reason of the facts aforesaid, the defendants, and each of them, ought to be in equity estopped from setting up or asserting any title to or interest in said lands or lots, or any part thereof, as against the plaintiff and the creditors of said bankrupt estate, and for the further reason, as plaintiff avers, that the proceeds of the sale of said lands and lots, together with all the other estate assets owned and belonging to said Rollin Ellison at the time of his adjudication in bankruptcy, will be wholly insufficient to pay the debts of said bankrupt. Therefore the plaintiff demands judgment.

A demurrer for want of facts was overruled to the second paragraph of the reply. It appears that the defendants also filed a cross-complaint, wherein they allege *in extenso* facts to show the creation of the trust in the lands described in the complaint, therein setting out the deeds and

the declaration of trust executed by Susan M. Ellison to Rollin Ellison to the lands in question. This cross-complaint embraces, among others, substantially the facts alleged in defendants' answer to the amended complaint. Apparently the second paragraph of the reply was made to serve the purpose of both a reply to the answer and an answer to this cross-complaint. A general denial was filed by the defendants as a reply to the second and third paragraphs of the answer to the cross-complaint. Upon the issues joined there was a trial by the court, and, upon request, a special finding of facts was made and a statement of conclusions of law thereon given adversely to appellants. These conclusions are as follows: "(1) That Susan M. Ellison has no title or interest in the real estate. (2) That the cross-complainants have no title, claim, or interest in the real estate. (3) That Susan M. Ellison and the cross-complainants are all estopped to assert any title to the real estate, and that the title is in the appellee for the benefit of the creditors of Rollin Ellison. (4) That the plaintiff, as trustee, is entitled to a decree that the defendants have no claim in the property, and giving him the absolute title to the real estate."

The appellants reserved proper exceptions to each of these conclusions, and over their motion for a new trial, assigning among other reasons therefor that the findings of the court were not sustained by the evidence and that they are contrary to law, the court rendered a decree whereby it adjudged that the plaintiff, Sidney K. Ganiard, trustee in bankruptcy of Rollin Ellison for the benefit of all the creditors of said Ellison, is the owner of all the real estate described in plaintiff's complaint and in the cross-complaint of defendants, and further adjudged and decreed that defendants had no claim against or interest in or to said described real estate, and that any claim of the defendants thereto is without right and unfounded, and that plaintiff's title thereto, as above found and adjudged, be,

and the same is, hereby quieted and forever set at rest as against each and all of said defendants, or any of them, and against all persons claiming under them, or any of them. To reverse this judgment this appeal is prosecuted.

The errors assigned challenge the ruling of the court in denying the motion for a new trial, and also call in question certain other adverse rulings in respect to the pleadings in the cause, but, in view of the conclusion we have reached—that appellee, under the facts established, cannot maintain this suit—we may properly pass by the questions raised upon the pleadings and address ourselves to the consideration of the cardinal point involved.

At the very inception of the consideration of this appeal upon its merits we are confronted with the contention of appellee's counsel that appellants, in the preparation of their brief, have not complied with the rules of this court. While it may be said that their counsel have not fully regarded and adhered to our rules, still they appear to have endeavored at least substantially to comply with the requirements thereof.

It is further contended that the motion for a new trial is unavailable so far as it is sought thereby to question the sufficiency of the evidence to support the decision of the trial court, or that it is contrary to law, for the reason that appellants, instead of employing in the motion the word "decision" as provided by subdivision six of §568 Burns 1901, §559 R. S. 1881, used the term "findings." This same point was raised and decided adversely to the contention of appellee in *Parkison* v. *Thompson* (1905), 164 Ind. 609, consequently this decision must rule the question here presented.

The facts material to the conclusion which we have reached, and which are established by undisputed evidence, may be summarized as follows: Rollin Ellison, for several years prior to the time of his being adjudged a bankrupt, carried on two private banks, one at Lagrange,

in Lagrange county, Indiana, and the other at Topeka, in said county. He received deposits in his banks and conducted a business generally pertaining to a banker. On September 18, 1903, upon his voluntary petition, he was adjudged a bankrupt by the United States district court within and for the district of Indiana, and on October 6, the same year, appellee was appointed trustee, and as such trustee took possession of all the property of said banker, real and personal. In the schedule filed by Ellison in the bankruptcy proceedings he stated that the title of the property which is described in appellee's complaint was in his name, but that it belonged to Susan M. Ellison, the sole devisee of Andrew Ellison, deceased. The schedules filed by the bankrupt disclosed real estate, not including that in controversy, belonging to him in the amount of $31,875. There are 800 creditors of the bankrupt, seventy-five per cent of whom were his creditors for a year or over prior to the filing of his petition in bankruptcy. January 10, 1899, Susan M. Ellison, the mother of Rollin Ellison and of the appellants herein, was the owner of the property set out in appellee's complaint and to which he seeks to quiet his title. She was an elderly lady and not in very good health, and appears to have been desirous of distributing some of her real property among her children. She conveyed the lands in question to her son, Rollin, in order to avoid the necessity of her being troubled by making many deeds to carry her purpose or desire into effect. Accordingly, on January 10, 1899, she executed a deed, absolute on its face, to Rollin Ellison. This deed was recorded within forty-five days in the recorder's office of Lagrange county, Indiana. While a money consideration was recited in the deed, none, however, appears to have been paid, or was intended for said conveyance. On the same day upon which she executed this deed to her son Rollin, and as a part of the same transaction, she executed to him the following declaration in writing:

"Lagrange, Indiana, January 10, 1899.
To Rollin Ellison:

I have this day conveyed to you several tracts of land in Lagrange county, Indiana. The purpose of doing so is to divide the value thereof among my children in equal parts. You will sell and convey the same, as soon as you find a proper purchaser therefor, to such purchaser, taking back to yourself as trustee proper securities for the unpaid portion of the purchase price. As soon as you receive any money on said property, divide the same among my children in equal parts, and pay the same over to them, and their receipts therefor shall be in satisfaction of this trust.

Susan M. Ellison."

This declaration of trust was never recorded in the recorder's office of Lagrange county, but appears to have been kept in the safe in the bank of Rollin Ellison, in which his mother had other papers and documents, and was in this safe at the time of his adjudication in bankruptcy. At the time Mrs. Ellison executed this declaration of trust, Rollin Ellison, the trustee, signed the following acceptance, which was attached to said writing:

"I accept the above trust and promise to carry the same out as directed.               R. Ellison.
January 10, 1899."

The appellants in this case, together with Rollin Ellison, were at that time, and still are, the only children of Susan M. Ellison, and resided at the following places, and they do not appear to have changed their residences: Thomas E. Ellison at Ft. Wayne, Indiana; Mrs. Emma F. Casebeer in the state of Nebraska; Mrs. Ellen M. Fountain at South Bend, Indiana; Mrs. Susan B. Williams at Ann Arbor, Michigan; Alice H. Ellison at Lagrange, Indiana, and Rollin Ellison at the same town. The real estate conveyed consisted of a house and lot occupied by Mr. Deeter; also a pasture lot and several other lots and parcels of land, all situated in the town of Lagrange, of the value of $5,000.

It does not appear that Rollin Ellison ever took any actual possession of the property, except that he looked after the rents, which, when collected, were turned over to Alice and his mother, and subsequently sent or distributed to her said children. Rollin Ellison, as it appears, during the time he held the lands in trust, sold and conveyed a part thereof, and the proceeds derived from the sales, together with the rents on hand, were distributed and divided among the beneficiaries of said trust by said trustee according to the provisions contained in said declaration.

There is evidence to show that Hartman D. Shoup, a township trustee residing in Lagrange county, in November, 1900, and from time to time thereafter, deposited moneys, held by him as such trustee, in the bank of Rollin Ellison. He testified that before making a deposit in the bank he made an inquiry at the recorder's office of Lagrange county, and ascertained that Rollin Ellison had in his own name various pieces of real estate, and various property holdings, which he, Shoup, estimated to be of the value of $18,000 and over. That he relied upon the real estate holdings of Rollin Ellison and was induced thereby to make his deposits. At the time Ellison was adjudged a bankrupt he owed Shoup $894.04, and the latter has received on this amount as a dividend $89.40. Shoup was unable to give a description of any of the property which he saw standing on the record in the name of Rollin Ellison. He never spoke to Rollin Ellison in regard to what he discovered from the inquiry or examination which he made in the office of the county recorder, nor inquired of him as to what real estate he actually owned, nor did he make inquiry of Susan M. Ellison, or of any of appellants.

Another creditor of the bankrupt, William Walters, who had been treasurer of the county of Lagrange since 1902, testified that he was acquainted with Rollin Ellison's property so far as the same is and was shown upon the tax duplicate. On September 8, 1903, Rollin Ellison bor-

rowed from Walters, to be used for one day, $1,000. This money is still owing and unpaid. Walters, upon being interrogated on the witness-stand as to what he relied on in making said loan to Rollin Ellison, said: "I relied upon what he had and upon his manner."

Aside from the creditors Shoup and Walters, there is no evidence to prove that any of the other 800 knew, at the time they became Rollin Ellison's creditors, that the deed of conveyance in question from Susan M. Ellison to Rollin stood upon the public records, disclosing that the title to the lands in controversy was held by him as his own, or that any of the creditors, other than Shoup and Walters, were in any manner induced or moved by that fact to deposit money in his bank or to make loans to him. No attempt appears to have been made at the trial to prove that the estoppel upon which appellee relied applied to or could be asserted by any of the creditors of the bankrupt other than the two heretofore mentioned. There is no evidence to prove that Susan M. Ellison conveyed the lands in dispute to her son for the purpose of giving him credit in securing loans or deposits in his bank. Save and except the fact that the deed in question was placed upon the public records without recording the declaration of trust, there is virtually no evidence to establish that the trust with which Rollin was invested was in any manner kept secret by him or his mother, or any of the appellants. In fact, it was shown that some of the latter notified tenants residing on a part of the property that it did not belong to Rollin Ellison; and there is no evidence to establish that any of the appellants in any manner gave out that Rollin was the owner of the property.

So far as the facts which we have set out are pertinent to the question of the trust in the lands involved in this case, we believe it may be said that they establish 3. that the conveyance of the real estate by Susan M. Ellison to her son Rollin, when considered in con-

nection with her written declaration, created an express trust in conformity with §3391 Burns 1901, §2969 R. S. 1881, which provides that "no trust concerning lands, except such as may arise by implication of law, shall be created, unless in writing, signed by the party creating the same, or by his attorney thereto lawfully authorized in writing." In order to create the trust contemplated by this provision of the statute, it is not essential that the deed by which the settler or creator of the trust conveys the property to be effected thereby shall, as a part thereof, contain the written declaration in respect to the trust, but it will be a sufficient compliance with the statute if the trust can be shown or proved by any writing, either signed by the person who is to be charged therewith or by the party who, under the law, is empowered to create it, provided that such writing points out or discloses the *cestui que trust* or beneficiary intended and shows the terms, nature, and conditions of the trust with sufficient certainty to enable a court to carry it out in the manner intended by the creator thereof. *Gaylord* v. *City of LaFayette* (1888), 115 Ind. 423; *Ransdel* v. *Moore* (1899), 153 Ind. 393, 53 L. R. A. 753; *Nesbitt* v. *Stevens* (1903), 161 Ind. 519. Or, in other words, as the authorities affirm, the intention of the creator of the trust must in respect thereto be shown by the written document with such a certainty that nothing more can be done by the trustee except to carry into effect the intention or purpose of the settler without any further act or appointment upon the part of the latter. The written declaration of Susan M. Ellison in this case is sufficiently clear and explicit, and the beneficiaries thereof, her children, the natural objects of her bounty, are pointed out in such a manner that their names can be easily ascertained. As disclosed by the evidence, the trustee, Rollin Ellison, under his own hand, accepted the trust declared by his mother and agreed to carry it into effect as directed, and he, at least in part, prior to his adjudication in bankruptcy, had

proceeded to execute the power conferred upon him by the instrument in question.

Susan M. Ellison, in the written declaration, did not manifest or declare that her purpose or intention in conveying the lands to Rollin was to vest the title thereof in him absolutely as his own property, but, on the contrary, she positively states that the conveyance by her made to him is for the purpose of having the value of the property conveyed equally divided among her children, and, in order to carry this purpose more fully into effect, she invested him with the power to sell and convey the lands and to divide equally among her said children the proceeds received. Their receipts, to the extent of money which they received from the trustee, were to be deemed or considered a satisfaction of the trust created. It is true that, inasmuch as an absolute power to sell and convey was

4. conferred upon the trustee by the written declaration in question, the fee to the lands was lodged in him, otherwise he could not successfully have carried out the trust so far as he was required to do so by selling and conveying the lands to purchasers. *Ewing* v. *Jones* (1892), 130 Ind. 247, 15 L. R. A. 75.

It is true that §3393 Burns 1901, §2971 R. S. 1881, provides that the record of the trust "in the proper county shall be deemed actual notice thereof to every per-

5. son claiming under a conveyance made or lien created, after such recording." Section 3392 Burns 1901, §2970 R. S. 1881, declares that "no such trust, whether implied or created, shall defeat the title of a purchaser for a valuable consideration without notice of the trust." If the written document by which the trust was declared had been duly acknowledged and recorded in the recorder's office of Lagrange county within forty-five days, no question could have arisen between appellants and any of the creditors of Rollin Ellison, but the mere fact that the writing was not recorded did not in any manner break

down or impair the creation of the trust concerning the lands in controversy.

As the real estate in controversy in this suit was trust property, held by the bankrupt in trust for appellants at the time the proceedings in bankruptcy were instituted, consequently, under the law, it was not liable in any manner for the payment of his debts, excepting the interest which he held therein as one of the beneficiaries. It could not have been levied upon and sold under judicial process by any of his creditors in satisfaction of their claims, hence it did not pass to or vest in appellee as his trustee under §70 of the United States bankruptcy law. 30 Stat., pp. 544, 565, U. S. Comp. Stat., p. 3451. The general rule or test by which it is to be determined whether title to property passes to or vests in the trustee under this section is, could the particular property have been levied upon and sold under judicial process against the bankrupt? If it could, then it passes to his trustee in bankruptcy; otherwise it does not. Collier, Bankruptcy (5th ed.), p. 586, and authorities cited; Loveland, Bankruptcy (2d ed.), §174, and authorities cited; Brandenburg, Bankruptcy, §787.

While a trustee in bankruptcy may be regarded, to an extent, as a purchaser, he is, however, in no sense an innocent purchaser. He stands in the shoes of the bankrupt and takes the property and assets of the bankrupt which are unaffected by fraud, in the same condition as it was held by the bankrupt, and his taking thereof is subject to all the equities impressed upon it in the hands of the latter, except in cases where there has been a conveyance of, or encumbrance on, the property which is void against the trustee by some provision of the bankruptcy act. *In re Garcewich* (1902), 115 Fed. 87, 53 C. C. A. 510, and authorities cited; *Sellers* v. *Hayes* (1904), 163 Ind. 422.

It is insisted, however, by counsel for appellee that inasmuch as it appears from the deed of Susan M. Ellison to Rollin that he was the absolute owner of the property, therefore appellee, his trustee, has a sufficient basis or title upon which he can predicate this suit. It is true that this deed, standing alone, shows upon its face that the conveyance was absolute, without any conditions imposed, but when the deed in question is read and considered, as it must be, in connection with the written declaration of trust, which was also introduced in evidence, all title which the bankrupt, or appellee as trustee, could set up thereunder against appellants is completely broken down and destroyed, and under the circumstances the deed affords no basis to maintain this suit.

But the contention is advanced that the trustee is entitled to predicate his right successfully to prosecute this suit upon the grounds that an estoppel against appellants in favor of the bankrupt's creditors is established by the evidence by reason of the deed's having been permitted by appellants to remain on the public record during the time it did without their giving any notice or warning to persons loaning money to the bankrupt or making deposits in his bank that he was not the owner of the property conveyed to him. It is contended that appellee is invested with the power to assert this estoppel against appellants for the benefit of all the creditors of the bankrupt. But the facts established show that out of the 800 creditors, but two, Shoup and Walters, can be said to have any basis whatever for asserting or invoking the principle of estoppel against appellants. Conceding, for the sake of argument, without deciding, that these two creditors, under the evidence, have the right successfully to assert an estoppel against appellants, certainly these facts alone would not, under the law, justify appellee, as trustee, to maintain this suit and thereby, as he has succeeded in doing under the decree of the trial court, bring all of

the property in controversy into the estate of the bankrupt to be disposed of for the benefit of all of the insolvent's creditors. This proposition is so manifestly true that, it appears to us, nothing can be said to the contrary. A case which very much supports the proposition we assert is *Audenried* v. *Betteley* (1862), 5 Allen 382, 81 Am. Dec. 755. In that appeal it was claimed that a contract between the plaintiffs and the insolvent was made in order to enable the latter to obtain a false credit in conducting his business in the purchase of merchandise and the borrowing of money upon the strength of the possession of property which apparently belonged to him. It was held by the court that an assignment under the insolvency laws of the state of Massachusetts did not vest in the assignee title to property which had been placed in the hands of the insolvent for the fraudulent purpose of giving him a false credit, although some of his creditors may have been defrauded thereby.

The question of estoppel in that case, as in this, was advanced by the parties and considered by the court.

Judge Hoar, in passing upon the question, said: "An estoppel *in pais*, on the ground of fraud, is personal to the particular creditor defrauded, and does not pass the property so as to inure to the benefit of creditors generally. As was said by Mr. Justice Curtis, in *Hawes* v. *Merchant* [1852], 1 Curtis C. C. 136, 144: 'To constitute such an estoppel, a party must have designedly made an admission inconsistent with the defense or claim which he proposes to set up, and another party have, with his knowledge and consent, so acted on that admission that he will be injured by allowing the admission to be disproved; and this injury must be coextensive with the estoppel.'" If the two creditors in question, or any other of the 800, has a right successfully to assert an estoppel against appellants, it is a matter personal to them, and they may avail themselves of such an estoppel, in a suit against appellants to subject the lands in question to the payment of their respective

claims.  It may possibly be suggested in passing that if any of the bankrupt's creditors are in a position successfully to assert an estoppel against appellants in such a suit, then the question might arise whether they can be said, under the law, to have a preference over the general creditors and in respect to their claim under such circumstances are not represented by appellee as trustee.  But as to this question we intimate no opinion.  See, however, *Sellers* v. *Hayes, supra,* and authorities there cited.  It follows that, under the facts, upon no view of the case, can appellee's right to maintain this suit be upheld, and the finding of the trial court, sustaining his right in this respect, is not supported by the evidence and is contrary to law, and a new trial should be awarded.  Other questions are discussed by counsel for appellants, but in consideration of the conclusion which we have reached we leave them undecided.

The judgment is reversed, and the cause remanded, with instructions to grant appellants a new trial.