BOLEN, APPELLANT, *v.* HUMES ET AL., EXRS., APPELLEES.

(No. 335—Decided November 27, 1951.)

Mr. *Roland A. Sedgwick,* for appellant.
Mr. *H. Lloyd Jones,* for appellees.

McClintock, P. J. This is an appeal on questions of law from a judgment of the Probate Court of Delaware County. The facts as shown by the record are as follows:

Harry Irwin married Louise Pollock on June 25, 1942, and died April 10, 1951. Several weeks prior to his marriage to Louise Pollock, he gave her a diamond ring. Irwin obtained the ring from the sister of his first wife, who had borrowed some money from him, and he asked Louise Pollock whether she was willing to accept this ring instead of a new one, to which she agreed. This conversation occurred while Harry Irwin and Louise Pollock were sitting in an automobile in the yard of the home where Louise Pollock lived. This ring had three stones set in a white gold mounting.

Before their marriage they had planned to take a wedding trip to Cedar Point, and she asked Irwin to put the ring back in the safe-deposit box as it was too valuable to take to Cedar Point. This conversation occurred the day before their marriage. She claims she never wore the ring since that time for the reason that after their marriage they went back to the farm during the early part of the war, that she was busy

feeding chickens, washing milk cans, etc., that they had considerable hired help at that time, and that she did not want this expensive ring on the farm.

After their marriage they went to the bank and arranged for her to sign his name on checks, and they went through the box and the ring was still there. Afterwards, on October 6, 1949, Irwin executed a will, item 2 of which reads as follows:

"I give and bequeath my diamond ring to Doris Rhodes."

Defendants-appellees qualified as executors of Irwin's estate, made an inventory and appraisement of his estate, and did not list this ring, but wrote on the inventory: "Ring not appraised. Was given to Louise P. Irwin as engagement ring."

Plaintiff-appellant, Doris Rhodes (Bolen), filed exceptions to the inventory, claiming that this ring was her property and not the property of Mrs. Irwin. Another exception to the inventory was filed by the plaintiff but was abandoned at the time of trial.

After decedent's death, the ring was found in the safe-deposit box of Harry S. Irwin. He was the only person who had access to this box. It appears further from the record that Louise Pollock, prior to her marriage, had worn the ring. Several witnesses testified to this fact. There is no question from a reading of this record that the ring was properly identified as the ring that was given to her prior to her marriage.

After hearing, the Probate Court overruled the exceptions to the inventory, and plaintiff appealed to this court on questions of law, alleging two assignments of error, to wit:

"1. That the finding and judgment of the court is contrary to the law and facts in respect to the request for a directed verdict.

"2. That the finding and judgment of the court is contrary to law in overruling the objections of the plaintiff-appellant to the admission of the testimony of Louise Pollock Irwin."

The only issue in this case is the question of the ownership of the ring. It is the claim of the executors that the ring is the property of Louise P. Irwin, the widow, by virtue of the fact that it was given to her as an engagement ring, and that title to the ring still remains in her, although it was found in Irwin's safe-deposit box where it had been placed for safe keeping.

On the question as to whether or not this was a valid gift *inter vivos*, we cite *Bolles* v. *Toledo Trust Co., Exr.*, 132 Ohio St., 21, 4 N. E. (2d), 917:

"1. The essentials of a valid gift *inter vivos* are (1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2), in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it.

"2. To support such a gift, clear and convincing evidence is required."

As to the burden of proof in this case, we cite *Steward* v. *Barry, Admr.*, 102 Ohio St., 129, 131 N. E., 492.

"3. Where an attempt is made to charge the administrator with more assets than are charged by the appraisement and the account, the burden of proving the existence of such additional assets is upon the objector.

"4. When the correctness of a credit taken by an administrator in his account is challenged, the burden of establishing the validity of such credit is upon such administrator."

It is claimed by plaintiff that Louise Irwin was disqualified from testifying by the provision of Section 11495, General Code, which reads as follows:

"A party shall not testify when the adverse party is the guardian or trustee of either a deaf and dumb or an insane person, or of a child of a deceased person, or is an executor or administrator, or claims or defends as heir, grantee, assignee, devisee, or legatee of a deceased person except: * * *"

It is contended also that the witness is disqualified by reason of Section 11494, General Code, which, in part, reads as follows:

The following persons shall not testify in certain respects:
"* * *

"3. Husband or wife, concerning any communication made by one to the other, or an act done by either in the presence of the other, during coverture, unless the communication was made, or act done, in the known presence or hearing of a third person competent to be a witness. The rule shall be the same if the marital relation has ceased to exist."

As to her testifying with reference to this conversation being in violation of Section 11495, it is to be noted that Louise Irwin is not a party to this suit and would not come within the provisions of Section 11495. On this question we cite *Hubbell* v. *Hubbell,* 22 Ohio St., 208, 221, as follows:

"On these questions we are entirely satisfied, not only from the light of decided cases (see 13 Ohio St., 263; 17 Ohio St., 640 and 18 Ohio St., 73), but upon the true construction of the statute, that both the party disqualified and the adverse party referred to must be parties to the record, and adversely interested in the determination of the issues of fact, and they must

be so related to the action and the issues at the time of trial, but it matters not whether they stand upon the same side or opposite sides of the record.''

See, also, *In re Estate of Butler,* 137 Ohio St., 96, at page 113, 28 N. E. (2d), 186:

''Section 11493, General Code, abrogates the common-law rule as to the competency of witnesses and makes all persons having sufficient mentality and comprehension competent to testify in all cases. Sections 11494 and 11495, General Code, are exceptions to Section 11493, General Code, and must be strictly construed. *Stream* v. *Barnard, Exrx.,* 120 Ohio St., 206, 211, 165 N. E., 727. A party as referred to in the statute must be a party to the record and not simply interested in the result of the litigation. *Cockley Milling Co.* v. *Bunn, Admx.,* 75 Ohio St., 270, 274, 79 N. E., 478; *Hubbell* v. *Hubbell,* 22 Ohio St., 208; *Powell, Admx.,* v. *Powell, Admx.,* 78 Ohio St., 331, 85 N. E., 541; *Loney* v. *Walker, Admr.,* 102 Ohio St., 18, 130 N. E., 158.''

In view of these authorities, to admit the testimony of Louise Pollock Irwin was not in violation of Section 11495, General Code.

As to the admission of her testimony being in violation of Section 11494, General Code, it is to be noted that that section refers to any communication during coverture. The testimony of Louise Pollock Irwin related to conversations had prior to her marriage. We cite 42 Ohio Jurisprudence, 245, Section 241, as follows:

''[Necessity of Existence of Marital Relation at Time of Act or Communication.] It is, of course, necessary that the relation of husband and wife exist between the parties at the time of the act or communication sought to be proved, in order for the testimony of the spouse to be incompetent under the rule as to privi-

leged communications. So, of course, personal communications between a husband and wife after a divorce are not privileged, even though the divorce was fraudulently procured, if they never afterward recognized each other as husband and wife. Moreover, acts or communications between the spouses are not privileged when made before the marriage, even though made at the time the marriage was entered into and as a necessary means of entering into the marriage relation.''

It is the opinion of this court, in view of the facts in this case and the authorities cited, that this witness was competent.

It is claimed by plaintiff that inasmuch as the donor had possession of the gift at his death, the ring belonged to the estate and should have been listed in his inventory and appraisement. However, in this case we do not find any evidence of a revocation. On this question we cite 20 Ohio Jurisprudence, 72, Section 55, as follows:

''The same solemnity of conduct and clear intention which characterizes the making of a gift *inter vivos* must accompany its revocation. The fact that the donor had possession of the subject of the gift at his death, if such possession is not inconsistent with a gift, does not indicate that revocation was intended.''

Also, 24 American Jurisprudence, 757, 758, Sections 51, 53:

''[Persons Engaged to be Married.] In the normal relation of the contracting parties to a future marriage, the man occupies the dominant position, and in the absence of evidence that this relation has been reversed, a completed gift made by him to his fiancee cannot be revoked at his option, even though it plainly appears to have been improvidently made and without the benefit of competent, independent advice.''

"[Generally.] It is a general rule that a completed gift *inter vivos* is irrevocable by the donor, his heirs, and personal representatives, and is not revoked by the property being mentioned in a will. A gift *inter vivos* from parent to child, when fully executed, is irrevocable."

In conclusion, it is the opinion of this court on a full consideration of the facts as shown by the record, and the law as we have herein cited it, that the assignments of error of plaintiff are not well taken. The judgment of the Probate Court is, therefore, affirmed.

*Judgment affirmed.*

PUTNAM, J., concurs.

MONTGOMERY, J., concurring. With a great deal of reluctance I concur in the judgment. The reasoning and the conclusion reached by the writer of the main opinion in this case are clearly stated and apparently are justified by the decisions of the Supreme Court, to which reference is made. It must be admitted that there is difficulty in distinguishing the instant case from the cases upon which reliance is placed. The distinction lies only in the fact that in the case before us, the proposition which I desire to stress is more pronounced.

In my judgment, in view of the provisions of Section 11495, General Code, the widow of the decedent should not have been permitted to testify in support of her claim as to the ownership of this ring.

While she was not an adverse party insofar as the style of the case is concerned, nevertheless she certainly is adverse to the estate, claiming this ring as against it.

Insofar as the decedent is concerned, there are sub-

stituted for him in this action, his estate and his personal representatives, and his will is the expression of his position and attitude with reference to his property.

Of course, I realize that without her testimony she probably could not have won and that an injustice might have been done her. But such possible injustice is less pronounced than is the situation where she is permitted to testify as to facts, and the only one who could dispute her claim is no longer in being. If there is any presumption, it is that the testator in making this will regarded this ring as his own property, yet here when he cannot contradict her statements the claimant is permitted to set forth her contention, which is certainly adverse to the provisions of the testator's will.