PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* WILSON ET AL.

[No. 6,719. Filed April 27, 1910. Rehearing denied June 29, 1910. Transfer denied November 17, 1910.]

1. RAILROADS.—*Raising Grade.*—A railroad company has a right to elevate the grade of its tracks. p. 448.

2. RAILROADS.—*Elevating Grade.*—*Farm Crossings.*—*Destruction of.*—*Damages.*—*Complaint.*—A railroad company that is granted

a right of way on condition that it maintain a farm crossing for the grantor, may elevate its track so that it is impracticable to maintain such crossing, but a complaint showing such facts and demanding damages, is sufficient. p. 448.

3. RAILROADS.—*Farm Crossings.—Failure to Maintain.—Complaint.* —A complaint alleging that defendant railroad company agreed to maintain a farm crossing over its track for the plaintiffs, that an underground crossing is impracticable, that an overgrade one can not be constructed where defendant attempted to construct it, but can be at another point, and demanding damages, is sufficient. p. 448.

4. RAILROADS.—*Farm Crossings.— Evidence.— Oral.—Possession.— Title.—Damages.*—In an action by the owners of a farm, against a railroad company, for damages for the company's failure to construct and maintain a farm crossing, oral evidence that the plaintiffs occupy the land is sufficient evidence of ownership, where there is no evidence otherwise. p. 449.

5. ESTOPPEL.—*Denying Title under Deed Conferring Title.*—A railroad company is estopped to deny a title recognized by the deed under which it claims. p. 450.

6. RAILROADS.—*Deeds.—Covenants Running with Land.*—The successor of a railroad company to which was granted a right of way on condition that it maintain a farm crossing, is bound thereby. pp. 450, 453.

7. RAILROADS.—*Farm Crossings.—Failure to Maintain.—Damages. —Instructions.*—In an action against a railroad company for damages for failure to maintain a proper farm crossing over its tracks, an instruction that if the finding is for the plaintiffs the measure of damage should be "the cost of the construction or completion of a crossing, together with such amount as will compensate them for the loss of the use and enjoyment of their lands" up to the time of the trial, if such loss existed, and if it be found necessary, in the construction of a proper crossing, to extend the approaches into plaintiffs' land, and that the land will be damaged thereby, such damage may also be considered, is not objectionable, where the evidence showed that a crossing at the point where defendant attempted to make it would require approaches. pp. 451, 452.

8. JUDGMENT.—*Res Judicata.—Opinion on Former Appeal.*—The opinion of the Appellate Court in a case constitutes the law of the case, in subsequent appeals therein. p. 451.

9. RAILROADS.—*Farm Crossings.—Failure to Make.—Depreciation of Land.—Evidence.*—In an action against a railroad company for damages for its failure to construct and maintain a farm crossing, evidence of the value of the plaintiffs' farm with and without a proper crossing is admissible. p. 453.

From Blackford Circuit Court; *Charles E. Sturgis,* Judge.

Action by James W. Wilson and another against the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiffs, defendant appeals. *Affirmed.*

*G. E. Ross,* for appellant.

*W. J. Houck, Harness, Moon & Voorhis* and *Waltz & Secrest,* for appellees.

MYERS, C. J.—Appellees brought this action against appellant to recover damages for the destruction of a farm crossing over appellant's right of way and railroad tracks, in violation of a provision in a certain deed, giving appellant a paper title to such right of way.

Many of the matters suggested by counsel for appellant at this time were sufficiently discussed in the opinion on the former appeal. That opinion also shows the facts substantially as they appeared in evidence upon the previous trial. *Pittsburgh, etc., R. Co.* v. *Wilson* (1904), 34 Ind. App. 324.

On the return of this cause to the court below, the pleadings were reformed by the filing of two amended paragraphs of complaint and a third paragraph. A demurrer to each of these paragraphs for want of facts was overruled. When the case was here before, as now, each paragraph was based upon a deed of conveyance of the right of way, which contained a covenant on the part of the railroad company, grantee, "to make for the grantors one farm crossing; together with all legal and equitable rights, claims and demands therein and thereto."

The first paragraph of the complaint, after showing that appellees were the owners of the land on each side of appellant's right of way, and the change of grade of the railroad tracks in 1901, whereby the crossing at grade which existed at that time, and at the time of the conveyance, and for many years thereafter, was, by appellant, without the consent of appellees or either of them, wrongfully and without

right destroyed by the erection and construction of an embankment over said crossing, alleged that appellant, ever since the constructing of the embankment, had wholly neglected, failed and refused to construct or maintain, or permit to be constructed or maintained, any other crossing in lieu thereof, and that appellees have been wholly deprived of a crossing. After showing that the embankment at its highest point was more than twenty feet high, and at its lowest point eight feet high, its average height being fourteen feet, it was alleged from the break on each side it was almost perpendicular and of such height, and the contour of the land adjoining was of such a character, as to render it impossible and impracticable to construct a crossing over and across appellant's right of way, grade and embankment, with proper or sufficient approaches thereto to permit appellees or the occupants of the land to use it as a farm crossing with any degree of safety.

In the second paragraph it was shown that in 1902 appellant, as a partial compliance with its contract, constructed a crossing over the tracks of its railroad on the top of the embankment, at a point some rods east of the place where the destroyed crossing was located, and at a point where the embankment and tracks were ten feet above the surrounding surface, by placing planks suitable for a crossing between the rails and at the sides of its tracks, but that it wholly failed, neglected and refused to construct the approaches thereto so that it could be used by appellees as a crossing, or was suitable for the use and benefit of the occupants of said lands; that before appellees could use it as a farm crossing it would be necessary to build and construct approaches thereto; that by reason of the sloping condition of the surface of the land at that point it would be necessary to extend the approaches for a long distance onto appellees' land on either side of appellant's right of way, to the great and irreparable damage of the land; that in order for appellees to construct and complete said approaches it will be necessary for them

to expend a large sum of money. Other damages also were stated.

The third paragraph was substantially like the second, except that it stated that a practicable crossing could be constructed, with approaches suitable for a farm crossing, at a point 150 feet east of the place where the appellant attempted to build a crossing, by grading and constructing. approaches upon the right of way, and extending them out over the lands of appellees on each side of the right of way, and that by reason of the high grade and embankments, and the condition of the land adjacent, there was no other place where an overgrade crossing could be constructed as easily or as cheaply.

While it is true that the railroad company had the right to raise the grade of its tracks, yet it had received its right of way under a contract to make a farm crossing, ''together with all legal and equitable rights, claims and demands therein and thereto.'' If it chose to raise its grade, as described in the complaint, and failed to provide an undergrade crossing, and it was impossible to make a practicable overgrade crossing wholly on its right of way, and it was occupying the right of way under a contract requiring it to provide one crossing, it cannot be pretended that the law is so impotent as not to furnish any remedy, by way of damages, for such an injury to the farm, as to make it practically impossible to enjoy the use of one-half thereof with safety and reasonable convenience. Therefore, the first paragraph of the complaint was sufficient.

The second and third paragraphs show that appellant recognized its obligation to provide a crossing, and constructed one without proper approaches thereto. The second paragraph shows that the crossing so made was impracticable, but that it might be made practicable by extending approaches beyond the right of way, and the third paragraph shows that a passable crossing could not be made at the place so selected by the appellant, but might be

made at another designated point, by extending the approaches over the land of appellees.

·Appellant having failed to make an undergrade crossing, and it being practicable to make an overgrade one, and it being bound by its contract to make a crossing at its own expense, and not having done so, it would be liable in damages. The second and third paragraphs each shows a cause of action.

Appellant's motion for a new trial was overruled.

4. Upon the trial the cause proceeded upon the theory set forth in the second paragraph of complaint. It is insisted that appellees should not have been permitted to prove by parol their ownership of the farm divided by the right of way into nearly equal portions, and that they should have been required to prove title by the production of deeds of conveyance.

Abram Wilson was the owner and occupant of the land in question at the time of the construction of the railroad. Delia Wilson was the widow of Abram Wilson, and with Frances M. Crumley, one of the two appellees herein, and Nancy Shrack, their husbands joining, in 1883 executed the deed for the right of way containing the covenant upon which this action is predicated. At the time the deed was made, Delia Wilson's interest in the land was that received by her as widow of Abram Wilson, and the interest of her two daughters in the land came to them by inheritance from their father. Abram Wilson died in 1874, and his widow, mother of appellees, Frances M. Crumley and James W. Wilson, died in 1887. In 1888 James W. Wilson purchased the interest from his sister, Nancy P. Shrack, and he lived on the farm from that time until after the destruction of the crossing and the commencement of this action. It was upon his demand that the imperfect crossing was made.

The contract in suit was one by virtue of which appel·

lant held and used its right of way. Proof of occupancy of land is sufficient evidence of title in the occupant as against all persons except those claiming under a superior title. There was no claim of title to the adjoining lands adverse to the appellees. The right of appellee to maintain the action was sufficiently shown. 3 Washburn, Real Prop. Ch. I, §1, Ch. II, §7.

Possession of land is sufficient evidence to refer the question of title to the jury. *Robinoe* v. *Doe* (1841), 6 Blackf. 85; *Stockwell* v. *State, ex rel.* (1884), 101 Ind. 1; *Herff* v. *Griggs* (1890), 121 Ind. 471, 476; *Wendell* v. *Blanchard* (1822), 2 N. H. 456.

"A party is estopped from gainsaying a title which is recognized in a deed under which he claims." *Hart's Heirs* v. *Johnson* (1833), 6 Ohio *87. It was shown in evidence that in 1891 appellant became the owner of the right of way and railroad as the successor to the Chicago, St. Louis and Pittsburgh Railroad Company, the grantee in said deed of conveyance of the right of way executed in July, 1883, and recorded August 1, 1883. The last named company was the owner of the road in the fall of 1883, but when it became the owner was not shown. It is contended that appellant is not bound by the covenant before quoted from said deed, although the company to which the deed was made owned the road from 1883 to 1891, when appellant became its successor.

In the case of *Bravard* v. *Cincinnati, etc., R. Co.* (1888), 115 Ind. 1, it was held that it was competent for a landowner to grant a right of way over his land to a railroad company in advance and in aid of its organization, and for the company, after its organization to ratify and accept the grant.

The company, to which the grant in this case was made, entered upon and used the right of way, as has appellant, its successor. There is no pretense of any right by either

company, except through the grant evidenced by said deed. Appellant's objection is not sustained.

The most important question presented by this appeal arises upon the introduction of evidence, and upon the instructions to the jury affecting the measure of damages. Instruction six, given at the request of appellees, was as follows: "If you find for plaintiffs, the measure of their damage will be the cost of the construction or completion of a crossing, together with such amount as will compensate them for the loss of the use and enjoyment of their lands during the period of their deprivation down to the time of this trial, provided you find that they, in fact, have lost the use and enjoyment of their said lands, or any part thereof, during said time or any part of said time by reason of the default of defendant; and if you find from the evidence in the case that it will be necessary, in the construction of said crossing, to extend the approaches thereto out into plaintiffs' said lands, and that their said lands will be damaged thereby, then I instruct you that you may consider such damages also in addition to the other damages proved in the trial."

It is claimed that this instruction permitted the jury to assess double damages. We do not so understand it, nor do we believe the jury could have so understood it. There was evidence showing that on account of the destruction of the crossing appellees were deprived of the use of a portion of their land, and that such deprivation caused them some loss. It was the duty of appellant to provide and maintain a crossing, and damages arising alone from its failure to perform that duty must be regarded as allowable, and it was not an error so to instruct the jury. Upon the former appeal of this case (*Pittsburgh, etc., R. Co.* v. *Wilson, supra*) it was held that the cost of the construction or completion of a crossing was a proper element of damages. That ruling to that extent is the law of

the case, and so far as the instruction was based on that rul-
ing it was not erroneous.   From the evidence it might be
said that appellant could have made an undergrade
7.   crossing at the point of the old crossing, but that it
decided to make an overgrade crossing, selected the
place, and attempted to make the only crossing it was will-
ing to construct, and that a safe and practicable cross-
ing could not be made at the place so selected without ap-
proaches, consisting of embankments extending far beyond
the right of way and over the adjoining lands of appellees
on either side of such right of way.

In view of these facts, evidence was admitted, over ap-
pellant's objection, tending to show the value of the farm
with a crossing consisting of such extended approaches and
without such approaches.   The instruction in question also
proceeded along the line of this evidence and was within
the issues.   Appellant's objection to this evidence, as well
as its objection to the instruction, calls in question the right
of the jury to take into consideration, as an element of
damages, the depreciation in value of said farm, if any, by
reason of such extended approaches, and which were shown
to be a necessary part of a reasonable and suitable over-
grade crossing.   Appellant was bound to make one cross-
ing, and under a reasonable construction of the contract
appellees should be subject to no expense or pecuniary loss
by reason of making the crossing.   The approaches will re-
quire the permanent taking of a part of appellees' lands,
for which they have received no compensation.   The taking
of these lands for such purpose and the effect of such ap-
proaches, otherwise affecting the value of the lands, were
proper subjects of inquiry, and therefore proper elements
to be considered by the jury in the assessment of the dam-
ages.   The questions here discussed and decided are not,
in principle, unlike many of the cases collected and consid-
ered in the opinion of this court in *Lake Erie, etc., R. Co.*
v. *Griffin* (1900), 25 Ind. App. 138.   See, also, *Lake Erie,*

*etc., R. Co.* v. *Lee* (1896), 14 Ind. App. 328; *Louisville, etc., R. Co.* v. *Sumner* (1886), 106 Ind. 55, 55 Am. Rep. 719; *Lake Erie, etc., R. Co.* v. *Power* (1896), 15 Ind. App. 179.

The covenant in question runs with the land. It was a contract which the parties had a right to make. Its object and purpose is plain, and should be applied so as to protect and remunerate the owner fully in the sense and to the extent intended thereby. As stated in the case of *Chicago, etc., R. Co.* v. *Barnes* (1888), 116 Ind. 126: "There was a valid contract between the parties, founded upon a valuable consideration, and designed to accomplish a designated object. Contracts are, as a familiar elementary rule declares, to be construed by the light of attendant circumstances and with reference to the object it was the intention of the parties to accomplish." Therefore, in view of the propriety of awarding full compensation for the pecuniary loss sustained by the appellees, we are of the opinion that there was no error in admitting the questioned evidence, or in instructing the jury as to the measure of damages. Our attention has been called to other questions, but we are not persuaded that they are of sufficient importance to require space to show that they are without merit.

Judgment affirmed.