IRELAND *v.* FRANCISCO MINING COMPANY.

[No. 12,396.   Filed May 11, 1926.   Rehearing denied December 10, 1926.]

1.   DEEDS.—*Intention of parties to deed, how determined.*—The intention of the parties to a deed or other like instrument is gathered from a fair consideration of the entire instrument and the language employed therein, and should be consistent with the terms thereof, considering its scope and the subject-matter involved.   p. 431.

2.   LIFE ESTATES.—*A deed reserving a life estate to each of the grantors, together with the right to mine and remove therefrom any minerals found in the land, authorizes their assignee, during the life tenancy, to mine and remove coal from the land in the usual way.*—A deed conveying a remainder in fee simple to a son of the grantors, but reserving a life estate in each of the grantors, together with the right to mine and remove from said lands any coal, petroleum, oil, natural gas and minerals found therein, authorizes the assignee of the surviving grantor to mine and remove coal from said land, in the ordinary and usual course of mining, without being in any manner accountable to the remainderman for waste.   p. 433.

From Gibson Circuit Court; *Walton M. Wheeler*, Special Judge.

Ireland *v.* Francisco Mining Co.—85 Ind. App. 428.

Suit by William R. Ireland against the Francisco Mining Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Lucius C. Embree* and *Morton C. Embree,* for appellant.

*Charles O. Baltzell* and *Ernest R. Baltzell,* for appellee.

McMAHAN, J.—In August, 1910, John M. Ireland, being the owner of a sixteen-acre tract of land in Gibson county, his wife, Elizabeth, joining, by warranty deed conveyed the same to his son, William R. Ireland, appellant herein. The grantors reserved and retained a life estate in each of them in the land so conveyed. The following is a copy of the deed:

"This Indenture Witnesseth, That John M. Ireland and his wife, Elizabeth, of Gibson County, State of Indiana, convey and warrant to their son, William R. Ireland, of Gibson County, in the State of Indiana, as an advancement in the sum of one thousand dollars, the following described real estate in said Gibson County, in the State of Indiana, to wit: (Description of the land.)

"To have and to hold unto the said William R. Ireland in fee-simple remainder and dependent only on the expiration of the life estates hereinafter mentioned, viz.:

"(1) An estate in all said lands for and during the term of the natural life of the grantor John M. Ireland, which is hereby expressly reserved to the said John M. Ireland.

"(2) An estate for and during the term of the natural life of the grantor Elizabeth Ireland, in the event she shall survive the grantor John M. Ireland, and which estate for and during the term of her natural life, in the event she shall so survive the said John M. Ireland,

is hereby expressly granted and conveyed to the said Elizabeth Ireland.

"It is further expressly provided and this deed is accepted subject to such provisions that, during the life estates hereinabove mentioned, the respective life tenants shall in turn have the right to mine and remove from said lands, in the ordinary and usual course of mining, any coal, petroleum, oil, natural gas and minerals found therein, and to appropriate and use as their own the proceeds of such mining without becoming in any manner accountable to the remaindermen for waste." The deed was signed and acknowledged by the grantors and was recorded in December, 1913.

John M. Ireland died prior to January 4, 1921, on which day, his widow, Elizabeth, entered into a written agreement with the Ayrshire District Collieries Company whereby she sold all the coal of what is known as vein No. 5, in and under said land, with the right to mine and remove the same, said collieries company agreeing to pay Mrs. Ireland four cents per ton for each ton of coal removed. The minimum amount to be paid to Mrs. Ireland each year was to be $500.

The name of the collieries company was later changed to Francisco Mining Company and appellant, by his complaint, seeks to enjoin the mining company from mining and removing the coal from the land so conveyed to him. To this complaint, appellee filed an answer setting up the deed to appellant and the agreement with Elizabeth Ireland and alleged that under such deed and agreement, it had the right to mine and remove the coal.

Appellant demurred to this answer for want of facts. The demurrer was overruled, and appellant excepted, and, refusing to plead further, judgment was rendered against him. From this judgment, he appeals and contends that his deed gave him the unqualified title in

fee in remainder to the land therein described, including the coal under the surface thereof and that Elizabeth Ireland had no capacity by any form of conveyance to transmit to appellee title to the coal in place. This contention is stated by appellant in his brief as follows:

"After the death of John M. Ireland, the legal effect of the reservation, in the deed of conveyance to Elizabeth Ireland, of the 'right to mine and remove from said lands in the ordinary and usual course of mining any coal * * * found therein and to appropriate and use as their own the proceeds of such mining, without being in any manner accountable to the remainderman for waste,' did not vest in her any greater right than she would have had as life tenant, other than the right to dig through the surface of the land conveyed, for the purpose of constructing a shaft, slope or drift, as a means of reaching the coal in place beneath the surface, and to use such part of the surface as should become necessary to carry on the process of mining. If a mine had been installed on the land in question, and was in operation, at the time of the execution of the deed, after the death of John M. Ireland, Elizabeth Ireland, as sole life tenant, would have had the right to operate it in a reasonable way, having due regard for the rights of the remainderman. The reservation did not vest in her any title to, or estate in, the coal, nor did it have effect to empower her to sell it." Appellant further says that Elizabeth Ireland, as a life tenant, was a trustee charged in equity with a duty, not to invade, but to protect, the rights and interests of the remainderman.

It is elementary law that the intention of the parties in the execution of deeds and other like instruments must control. The intention must primarily be 1. gathered from a fair consideration of the entire instrument and the language employed therein,

and should be consistent with the terms thereof, including its scope and the subject-matter involved. *Elsea* v. *Adkins* (1905), 164 Ind. 580, 74 N. E. 242.

In *Andrews* v. *Andrews* (1903), 31 Ind. App. 189, 67 N. E. 641, where a person made a will devising certain land to his wife for life with remainder over, and thereafter, for a consideration, executed a lease of the land whereby he "grants unto" the lessee "all the oil and gas in and under" the land "with the right to enter thereon at all times for the purpose of drilling and operating for oil or gas," and subsequent to the execution of the lease died, at which time two oil wells had been drilled by the owner of the leasehold and were in operation, and where four new wells were drilled after the testator's death, it was held that the surviving wife, as devisee of the life estate, was entitled to the royalties accruing from the wells drilled after the testator's death as well as from those drilled prior to his death.

If John M. Ireland, prior to the execution of the deed to appellant, had made a lease or deed, using the same language as is contained in the reservation in the deed to appellant, granting to appellee "the right to mine and remove from said lands, in the ordinary and usual course of mining, any coal, petroleum, oil, natural gas and minerals found therein, and to appropriate and use as their own the proceeds of such mining without becoming in any manner accountable" to the grantor for waste, appellee would certainly have had the right to enter upon the land and to mine and remove the coal therefrom in the ordinary and usual course of mining. Or, suppose John M. Ireland had entered into an agreement with appellant agreeing to convey the land to him as an advancement and appellant, in consideration of such conveyance, had agreed to give his father and mother the right during their lifetime to mine and remove the coal from the land without being in any man-

ner accountable for waste, would it be contended that the father and mother or the survivor, upon having received a deed from appellant conveying to them a life estate with the right to mine and remove the coal, as did the reservation in the deed to appellant, would not have had the right to mine and remove the coal the same as appellee was doing? It is to be observed there is no claim that appellee was not mining and removing the coal in the "ordinary and usual course of mining."

We think it clearly appears that it was the intention of the parties that the grantors in the deed to appellant should have the right to mine and remove 2. the coal from the land, in the ordinary and usual course of mining, without being in any manner accountable to appellant for waste.

We are not here dealing with a case where a tenant for life, impeachable for waste, is removing coal from the land. For cases of that character see *Hendrix, Exr.,* v. *McBeth* (1878), 61 Ind. 473, 28 Am. Rep. 680; *Rupel* v. *Ohio Oil Co.* (1911), 176 Ind. 4, 95 N. E. 225; *Waldorf* v. *Elkhart, etc., R. Co.* (1895), 13 Ind. App. 134, 41 N. E. 396; *Andrews* v. *Andrews, supra; Richmond Nat. Gas Co.* v. *Davenport* (1905), 37 Ind. App. 25, 76 N. E. 525.

Judgment affirmed.

## ON PETITION FOR REHEARING.

McMAHAN, C. J.—Appellant in support of his petition for a rehearing says the essential questions of law arising upon the record depend largely upon the construction of the agreement between Mrs. Ireland and appellee, and complains because we set out the deed to him under which his grantors reserved the right to mine the coal, and did not set out the contract between his mother and appellee.

In this connection appellant says this agreement shows that the purpose and intent of his mother was to sell appellee all the coal in vein No. 5; that the title to the coal should pass on the execution of the agreement; that the coal should be removed within the shortest period of time possible; that his mother as life tenant should derive an annual income therefrom of not less than $6,000; and that appellant should be deprived of the whole of the coal in said vein.

The record does not sustain these contentions. The agreement gave appellee "the right to enter under and through, but not upon the surface of said lands at any time hereafter and search for coal of said number 5 vein, and when found to remove the same from said lands, together with all rights and privileges incident to mining and securing said coal." The "minimum yearly rental" to be $500, instead of $6,000 as stated by appellant. There is nothing in the agreement which by any possible construction can be construed as tending to show that the coal should be removed within any period of time. There is no allegation in either the complaint or the answer concerning the presence or absence of mines on the land in question at the time of the execution of the deed to appellant or at any other time, other than may be inferred from the allegation in the answer to the effect that appellee was mining and removing the coal "in the regular and ordinary way and manner of removing coal under like circumstances and like conditions," and "in strict compliance with the deed" to appellant and the agreement between Mrs. Ireland and appellee.

Appellee when it entered into the agreement with Mrs. Ireland knew her right to the coal on the land was secured under the reservation in the deed to appellant. It knew that the only title Mrs. Ireland had was a life estate with the "right to mine, and remove from said

land, in the ordinary and usual course of mining, any coal * * * without becoming accountable to the remainderman for waste." This agreement can only be construed to give appellee the right to mine and remove coal in the ordinary way during the lifetime of Mrs. Ireland. The demurrer admits the allegation in the answer to the effect that the coal was being mined and removed in the usual and ordinary manner.

A considerable portion of appellant's brief is devoted to the contention that a life tenant has the right to work mines already open and in operation at the time his estate vests, but has no right to open mines for the purpose of reaching and removing coal in place beneath the surface. No such question is · presented by the memorandum accompanying the demurrer to the answer.

Petition for rehearing denied.