ANTHONY C. GUIDO AND JOAN GUIDO *v*. CHARLES BALDWIN.

[No. 1-676A106. Filed March 9, 1977.]

*Robert E. Stewart, Guido & Stewart,* of Danville, for appellants.

*Arnold H. Brames, Francis & Brames,* of Terre Haute, for appellee.

## CASE SUMMARY

LOWDERMILK, J.—Plaintiffs-appellees Anthony C. and Joan Guido appeal from an adverse judgment in their action against defendant-appellee Charles Baldwin in which they sought a determination of the parties' rights in an 80-acre tract and partition of the tract.

We affirm.

In 1939 Annette and James Darnell conveyed most of the tract to Harry and Roscoe Baldwin by a warranty deed which reserved "the small cottage and a half acre garden plot" to the Darnells. At trial and in their brief the Guidos admitted that Annette Darnell conveyed to Charles Baldwin by quit-

claim deed any interest of hers in the reservation. In 1972 the Guidos acquired the interest in the tract once owned by Harry and Roscoe Baldwin by a warranty deed which conveyed to the Guidos the tract "[s]ubject to the interest, if any, of Charles Baldwin therein."

The trial court entered the following judgment:

"The court having heretofore heard evidence and having had this matter under advisement and being advised finds the plaintiffs are the owners and tenants by the entireties of the following described real estate in Parke County, Indiana: The north half (N ½) of the northeast quarter (NE ¼) of Section Thirty-six (36), Township Sixteen (16) North, Range Seven (7) West. Except the following described tract thereof: Beginning at a point on the West line of said 80 acre tract which point is equidistant between two houses now located on said 80 acre tract and running thence due east 209 ft. thence due south 209 ft., thence due west 209 ft., thence due north 209 ft. to the place of beginning and containing therein one small cottage. Court further finds that the defendant is the owner of the following described real estate located in Parke County, Indiana, to-wit: Beginning at a point on the west line of said 80 acre tract which point is equidistant between two houses now located on said 80 acre tract and running thence due east 209 ft. thence due south 209 ft., thence due west 209 ft., thence due north 209 ft. to the place of beginning and containing therein one small gray cottage. Court further finds that the parties should each pay one-half of the cost of this action. Ordered, adjudged and decreed accordingly."

The Guidos filed a timely motion to correct errors including the three errors argued in this appeal in addition to an assertion that the trial court's judgment contained an inadequate permanent legal description. The trial court's ruling on this motion stated, *inter alia:*

"The court now amends its decree of quiet title heretofore entered to require the property in the hands of defendant to be surveyed and staked with substantial markers. The court now orders the one acre tract in the hands of defendant as hereto fore [sic] described in the decree of quiet title to be surveyed and staked on each corner. Attorneys for the parties are ordered to attempt to agree on a surveyor and if they cannot agree to report that fact to the

court who shall appoint a surveyor. Cost of survey shall be shared equally by the parties. Motion to correct errors is now overruled in all other respects. Cause continued pending report of survey."

The Guidos filed a second motion to correct errors raising only the three issues argued in this appeal; the trial court denied this motion.[1]

## ISSUES

The Guidos argue the following issues:

1. Whether there was sufficient evidence to support the trial court's judgment.

2. Whether the trial court's judgment was contrary to law.

3. Whether the trial court erred in admitting Baldwin's Exhibit D into evidence.

## DECISION

Baldwin claims that this court lacks jurisdiction over the instant cause, arguing that the trial court's ruling on the Guidos' first motion to correct errors did not constitute a final judgment from which an appeal may be taken.

However, said ruling did not alter the trial court's decision that the Guidos own 79 acres of the tract and Baldwin one; said ruling is non-final only as to translating the trial court's descriptions into physical memorials so that the interests of the parties are permanently partitioned.

We cannot dismiss the Guidos' appeal for the reason that only the issue of ownership has been disposed of by the trial court. Ind. Rules of Procedure, Appellate Rule 4(E). Rather we will exercise our discretion to pass on the adjudicated issue of ownership. *Id.*

---

1. The Guidos filed their praecipe within 30 days of the trial court's ruling on their first motion to correct errors so that this appeal was perfected regardless of whether the second motion to correct was technically necessary.

ISSUES ONE AND TWO:

Inasmuch as the Guidos' complaint alleged that they owned the tract subject to Baldwin's interest in an unidentified one-half acre, they bore the burden of proving that they owned 79.5 acres of the tract. 63 Am.Jur.2d, *Property* § 21 (1972). Their appeal of the judgment declaring them to be the owners of 79 acres of the tract is therefore an appeal from a negative judgment. Thus they cannot challenge the sufficiency of the evidence—but can attack the judgment as being contrary to law. *Borden Cabinet Corporation* v. *Town of Borden (New Providence)* (1974), 160 Ind. App. 399, 312 N.E.2d 138; *Hinds* v. *McNair* (1955), 235 Ind. 34, 129 N.E.2d 533. The judgment will not be disturbed unless the evidence was without conflict and led but to one conclusion which was different than the one reached by the trial court. *Id.*

The crucial task in the case at bar was to determine the extent of the reservation in the 1939 deed.

The primary rule in interpreting a deed is that it is to be taken as a whole, with the grantor's intention controlling. *City of Greenfield* v. *Hancock County REMC* (1974), 160 Ind. App. 529, 312 N.E.2d 867; *Ireland* v. *Francisco Mining Company* (1926), 85 Ind. App. 428, 151 N.E. 700, 154 N.E. 239. All the words in a deed must be given effect for the purpose of determining the grantor's intent. *Ross, Inc.* v. *Legler* (1964), 245 Ind. 655, 199 N.E.2d 346; *Besing* v. *Ohio Valley Coal Co., Inc., of Kentucky* (1973), 155 Ind. App. 527, 293 N.E.2d 510, 59 A.L.R.3d 1137.

The interpretation placed upon the reservation by the trial court gives effect to all the words therein; the parties to the 1939 deed inserted the word "and" between two portions of the tract: the cottage, and the garden plot which lies south of the cottage and does not surround it. They thereby manifested their intent that the grantors retain a portion of the tract in addition to the half-acre garden plot.

To adopt the interpretation urged by the Guidos would be to treat the conjunction "and" as surplusage and to give it no effect.

Generally, ambiguous reservations—like the rest of a deed—are construed against the grantor and in favor of the grantee. *Connor* v. *Anderson* (1937), 104 Ind. App. 628, 8 N.E.2d 422. The Guidos place unfounded reliance upon this rule inasmuch as the record does not establish that the 1939 deed was drafted by the grantors. As this court noted in *Besing* v. *Ohio Valley Coal Co., Inc., of Kentucky, supra,* at 155 Ind. App. 535 :

> "However, the reason underlying this rule is that the grantor had the advantage of drafting the instrument. . . . In the instant case Besing has failed to direct us, nor are we able to find, any evidence in the record that the deed in question was prepared by . . . the grantor. Furthermore, it is not a proper case for application of this rule where its effect would be to violate the intent of the parties." (Citation omitted)

In an effort to arrive at the grantor's true intent where the language of a reservation in a deed is not entirely clear, the deed will be construed in the light of all the surrounding circumstances as well as the subsequent acts of the parties to the conveyance by which they construed it themselves. *City of Elkhart* v. *Christiana Hydraulics* (1945), 223 Ind. 242, 59 N.E.2d 353.

The Guidos point to the uncontradicted evidence that they were billed for real estate taxes on 79.5 acres while Baldwin was billed on one-half acre, and that the parties paid the taxes as billed without protest. They argue that this conduct subsequent to the 1939 deed leads inescapably to the conclusion that only one-half acre was reserved therein.

However, these actions were taken by persons who were *not* parties to the 1939 deed. And such conduct is not conclusive proof of ownership. 73 C.J.S., *Property* § 17 (a) (1951).

Evidence of the circumstances surrounding the 1939 deed and subsequent conduct of the parties thereto was that the grantors before and after 1939 resided in Terre Haute but spent weekends in the cottage which was reserved; in the separate garden which was reserved they grew vegetables which they canned. One of the grantors, Annette Darnell, pointed out to Baldwin that she owned: an area 209 feet by 209 feet, or approximately one acre.

Therefore the circumstances surrounding the 1939 deed and the parties' subsequent acts indicate that the grantors intended to reserve that portion of the tract which the trial court found belonged to Baldwin.

There was also evidence that after Baldwin acquired his interest he lived in the cottage when working in the area and grew vegetables in the garden plot south of the cottage. He erected a sign proclaiming that he owned the cottage lot as well as the half-acre garden and related his rights to potential buyers of the Guidos' interest when the potential buyers found him living on the tract.

Baldwin's possession of the land which the trial court found belonged to him sufficed to create a question as to his title about which reasonable men could differ. *Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co.* v. *Wilson* (1910), 46 Ind. App. 444, 91 N.E. 725. This evidence of possession raised a presumption that Baldwin owned the land. 63 Am. Jur.2d, *Property* § 21.

The evidence in the case at bar did not lead solely to a conclusion other than the one reached by the trial court. Its judgment therefore cannot be reversed as being contrary to law.

ISSUE THREE:

The Guidos contend that the trial court erred in admitting into evidence Baldwin's Exhibit D, which was a letter handwritten by Annette Darnell who declared therein that she was

giving .to Baldwin "my part of the Baldwin farm (the grey house and a half acre plot of ground for a garden spot[)]."

The Guidos first argue that the letter was self-serving hearsay. But the statement of Annette Darnell, through whom Baldwin traces his interest, made while she was in possession of her interest was admissible. *McDaneld* v. *McDaneld* (1894), 136 Ind. 603, 36 N.E. 286; *Maus* v. *Bome* (1890), 123 Ind. 522, 24 N.E. 345.

The Guidos maintain that the letter had no bearing on anyone's title inasmuch as it did not satisfy the formal requirements for a deed. But the letter was a subsequent act of a party to the 1939 deed to which the trial court could properly look in determining the intent of the grantors thereof. See *City of Elkhart* v. *Christiana Hydraulics, supra.*

The Guidos lastly assert that the letter was merged into the subsequent quitclaim deed to Baldwin. The rule upon which they rely is set forth at 8A G. Thompson, *Real Property* § 4458, at 331-332 (Grimes 1963 Repl.):

> "In accordance with contract law generally, all provisions in the contract are merged into the deed when executed and delivered except those covenants which are deemed to be collateral to the sale. Thus, the deed regulates the rights and liabilities of the parties. A deed in the absence of fraud or mistake is deemed to be an executed contract modifying the former executory contract of sale. To effect merger by operation of law, estates meet in one and the same person at one and the same time and in one and the same right. Intention is essential to merger in equity.

> "Evidence of contradictory earlier agreements cannot be introduced to vary the terms of a deed."

In Indiana, this rule extends to "all prior or contemporaneous negotiations or executory agreements." *Dubois County Machine Company, Inc.* v. *Blessinger* (1971), 149 Ind. App. 594, 599, 274 N.E.2d 279.

Even if Annette Darnell's unilateral declaration of intent comes within this rule, the quitclaim deed to Baldwin is not

included in the record so that we cannot ascertain whether the letter contradicts it. We cannot review an assertion of error which is not shown by the record. *Cooper* v. *State* (1972), 259 Ind. 107, 284 N.E.2d 799.

In any event, we will presume that if the letter was inadmissible it was separated from the proper evidence in the bench trial and not considered by the trial court judge. *City of Indianapolis, Dept. of Transportation* v. *Medenwald* (1973), 158 Ind. App. 128, 301 N.E.2d 795. As pointed out in our discussion of the first two issues there was ample other evidence which showed that Baldwin owned the land which the trial court found belonged to him.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 360 N.E.2d 842.