## Bump *v.* Sellers.

### [No. 7,960. Filed October 9, 1913.]

1. New Trial.— *Grounds.— Questions Presented.— "Finding."—* Under subd. 6, §585 Burns 1908, §559 R. S. 1881, providing, as ground for a new trial, "that the verdict or decision is not sustained by sufficient evidence, or is contrary to law", a motion assigning that the finding of the court is not sustained by sufficient evidence and is contrary to law, is sufficient to present to the lower court, and to the court on appeal, the question whether the decision was sustained by sufficient evidence; the term "finding" being regarded as equivalent to "decision".   p. 147.

2. Waters and Watercourses.—*Diversion of Waters.*—An upper riparian owner may not use or divert the waters from a stream in such a way as to destroy or materially diminish the watercourse, or render it unavailable for the use of the lower proprietor.   p. 150.

3. Waters and Watercourses.—*Natural Watercourse.—Defined Channel.*—To constitute a natural watercourse, it is not essential that the channel be well defined, but whether a constant flow of water from springs constitutes a natural watercourse is mainly a question of fact and a matter of proof.   p. 150.

4. Waters and Watercourses.—*Diversion of Waters.—Evidence.— Drains.*—Where there was evidence to show that a drain which defendant proposed to construct would pass under a natural watercourse flowing over the land of plaintiff so that, in addition to draining a boggy place and percolating waters on his land, it would operate to divert the waters of the stream to plaintiff's injury, the court's finding that the proposed drain would divert the waters of such stream to plaintiff's damage will not be disturbed.   p. 151.

From Huntington Circuit Court; *Samuel E. Cook,* Judge.

Action by Charles B. Sellers against Belle Bump. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Fred H. Bowers* and *Milo N. Feightner,* for appellant.

*John S. Branyan* and *Wilbur E. Branyan,* for appellee.

Ibach, J.—This suit was brought by appellee to enjoin appellant from constructing a drainage ditch which would divert water from a stream flowing through appellee's land, to his damage. A perpetual injunction was granted as prayed. It is assigned that the court erred in each of its conclusions of law upon its special finding of facts, and in overruling appellant's motion for new trial. This motion was upon the grounds, among others, that the finding of facts was not sustained by the evidence and is contrary thereto, that certain specific findings are not sustained by the evidence and are contrary thereto, and that the finding of facts is not full enough and does not state all the facts.

Appellee urges that under our statute (§585 Burns 1908, §559 R. S. 1881), these are not statutory grounds for new trial, and that therefore no question was presented to 1. the trial court by appellant's motion. The grounds for new trial, as provided by subd. 6, §585, *supra,* are, "That the verdict or decision is not sustained by sufficient evidence, or is contrary to law." However, in the cases of *Ellison* v. *Ganiard* (1906), 167 Ind. 471, 79 N. E. 450; and *Parkison* v. *Thompson* (1905), 164 Ind. 609, 73 N. E. 109, 3 Ann. Cas. 677, it is held a proper ground for new trial that the finding of the court is not sustained by sufficient evidence, or is contrary to law. The term finding is regarded as equivalent to the term decision, and a motion employing such term challenges the correctness of the court's decision. Therefore appellant's motion by the assignment that the finding of facts was not sustained by the evidence and is contrary thereto properly presented to the lower

court and to this court the question whether his decision was sustained by sufficient evidence.

Briefly stated, the court found the following facts: (1) plaintiff owns a certain described tract of land in Huntington County, defendant owns another described tract bordering on the east of the land of the plaintiff; (2) from time immemorial a natural watercourse having a well-defined channel, and natural bed and banks having its source on the lands to the south and east of the lands of plaintiff and defendant, has flowed across plaintiff's lands, thence across the western part of the defendant's lands, thence across the eastern part of plaintiff's lands and thence again across defendant's lands into the Wabash River. There are several natural springs of water on the defendant's land from which the water naturally issues and flows for the entire year, and in addition to the other natural supply of water, the water from said springs flows into said natural watercourse. Plaintiff uses his land for pasturing cattle and raising hogs and uses said watercourse to supply said animals with water, and has arranged his fences and fields for that purpose. The location of said lands, watercourse, springs, fields and fences and certain boggy land and the proposed drain are shown by the plat annexed. 3. That prior to the commencement of this action defendant intended and threatened to construct a six-inch tile drain on her land, commencing at said stream on the north end of said land, and to éxtend the same up over her land and under said natural watercourse to a point in said boggy land and near said spring, said proposed drain being indicated by a dotted line on the above plat, to drain said boggy land and to conduct the water from said spring down near her house into a basin or pond to be used for ducks and geese and other purposes. There is a natural ridge or bank to the north of said spring and boggy land which prevents the water from naturally flowing down over the line of said proposed tile drain. The only natural way to drain and

conduct the water from the boggy land and the spring is in said natural watercourse down over the plaintiff's land. Prior to the issuing of the temporary restraining order in the case, defendant without the consent of plaintiff had com-

menced the construction of said described tile drain and would have constructed the same if she had not been restrained from so doing. The land to the south of said spring and under said boggy land and to the north thereof and under said watercourse from said spring down below the

point where it would be intersected by said proposed tile drain is underlaid with a bed or stratum of gravel, which absorbs and stores away part of the water from said springs and from other sources and in times of dry weather the water from said bed of gravel finds its way into said stream and supplies the same with water. The construction of said proposed tile drain would tap and draw off the water from said bed of gravel and from said natural watercourse and would divert the water from said stream and prevent it from flowing over the plaintiff's land, except in times of high water. The diversion of said water would produce great injury to plaintiff and to his land.

The court stated the following conclusions of law: (1) the law is with the plaintiff; (2) the defendant has no right to divert the water in said watercourse; (3) the defendant ought to be perpetually enjoined from constructing said proposed drain and from diverting in any other manner the water in said natural watercourse.

The court has found as facts that the proposed drain would tap and drain off the water from the natural watercourse, and would divert the water from the stream to plaintiff's damage. It seems to us that these facts are sufficient to bring the case within the well known rule that an upper riparian owner may not use or divert the waters from a stream in such a way as to destroy or materially diminish the watercourse, or render it unavailable for the use of the lower proprietor. 2 Farnham, Water Rights §§489, 496-500; *Dilling* v. *Murray* (1855), 6 Ind. 324, 63 Am. Dec. 385. Counsel for appellee have contended that the waters sought to be drained were underground or percolating waters and not governed by the law relating to natural watercourses. It is mainly a question of fact and a matter of proof as to whether the waters drained were a natural watercourse. *Maxwell* v. *Shirts* (1901), 27 Ind. App. 529, 531, 61 N. E. 754. Where there is a constant flow of water from springs, it is not absolutely

necessary that the channel be well defined. 2 Farnham, Water Rights §501, and cases cited. But in addition to draining the boggy place and the underground waters,
4. the proposed tile drain was to pass under the bed of the natural watercourse. Appellant claimed that the entire purpose of the drain was to drain the boggy lands and carry away some water from the springs, which appellant did not seem to consider as diverting water from the natural watercourse whose existence was admitted, but rather as draining off surface water before it reached the natural watercourse. However, there was some evidence that the passing of the tile drain under the bed of the watercourse would in itself divert the water from that stream. This evidence alone, laying aside all controverting evidence, as we are required to do, when considering the sufficiency of the evidence to support a decision, would support the court's finding of fact. Since the evidence supports the finding, and the conclusions of law upon the findings are not incorrect, no reversible error has been shown, and the judgment is affirmed.

NOTE.—Reported in 102 N. E. 875. See, also, under (1) 29 Cyc. 951; (2) 40 Cyc. 604; (3) 40 Cyc. 555. As to right of riparian owner to the use of water and to the natural flow of the stream, see 79 Am. Dec. 638. On the question of correlative rights of upper and lower proprietors as to diversion of water, see 41 L. R. A. 744. As to the nature of riparian rights and lands to which they attach, see 9 Ann. Cas. 1235; Ann. Cas. 1913 E 709.