CITY OF ELKHART ET AL. *v.* CHRISTIANA HYDRAULICS, INC.

[No. 28,074. Filed February 28, 1945. Rehearing denied April 3, 1945.]

244

*Harman & Harman, C. C. Raymer,* and *Austin C. Gildea,* all of Elkhart, for appellants.

*Verne G. Cawley,* of Elkhart, for appellee.

YOUNG, J.—Prior to July 20, 1896, all of the land here involved with other land was owned in a single tract by James R. Beardsley. The land now owned by the City of Elkhart consists of approximately twenty-three (23) acres. The west part of the city's tract is covered by a mill pond and the east part is a natural water preserve. Wells were dug upon this portion of the real estate in which the water accumulates and from these wells it is piped to a pumping station south of Christiana Creek for distribution to the people of Elkhart. The land now owned by the appellee is contiguous to and lies immediately south of the city's land and the mill pond extends down on appellee's land. It also owns

a narrow strip of land, formerly used for a mill race, running south and east from the south end of the mill pond to the St. Joseph River.

Christiana Creek finds its source in a number of lakes north of the Indiana-Michigan line and flows south a distance of about eight (8) miles through the City of Elkhart and then eastwardly into the St. Joseph River. Because of its origin in said lakes the creek affords a constant supply of water throughout the year. This creek flows south across the eastern part of the land owned by the appellant city to the line which divides the city's land from the appellee's land. There the creek turns and meanders eastwardly back and forth across the dividing line, flowing part of the time upon appellant's land and part of the time on appellee's land.

For over 100 years the creek has been dammed at or about the point where it turns eastwardly near the dividing line between the two tracts here involved. This dam has created the mill pond referred to.

On July 20, 1896, Mr. Beardsley conveyed to the Elkhart Water Company the real estate now owned by the city and retained the real estate now owned by appellee. The deed to the water company contained certain exceptions and reservations expressed in the following language:

> "excepting and reserving to the grantor his heirs and assigns, the right to keep and maintain the Mill pond thereon situate, within its present limits at high water; with the right and privilege of ingress and egress for himself, his heirs or assigns, and agents at all times for the purpose of maintaining and repairing dam, bank and water ways appurtenant to and situate on said pond, . . .
>
> "It is further agreed that the grantor his heirs and his assigns will have the right to allow the water in said pond to flow into the Christiana Creek now situate on said land."

At the time of this conveyance a mill race tapped the mill pond at its southern-most point on the land now owned by appellee and ran to the St. Joseph River and was used to make power for a grist mill and a paper mill.

Later the water company conveyed its real estate to the City of Elkhart subject to the same exceptions and reservations and Mr. Beardsley continued to own the real estate south of the city's property until his death in 1902. In 1903 his heirs conveyed to Herbert E. Bucklen the real estate now owned by appellee, including the mill race and including the rights reserved in his deed to the water company above referred to. These rights were described in the deed to Mr. Bucklen in the following language:

> "Together with all the water rights, riparian rights, raceways, claims, easements, appurtenances and privileges belonging to said described land, and the water power appurtenant thereto. The grantors also sell and convey all of their rights, titles, claims, privileges, easements and appurtenances belonging or appertaining to the water power and privileges derived from the Christiana Creek in the City of Elkhart, Indiana, the dams, gates and raceways belonging to said water power, and the water privileges arising from the use of the water of said creek. It being the intention and purpose of this conveyance to sell and convey to the grantee all of the rights, privileges, easements and appurtenances belonging and connected in any manner with, the said water power wherever located, and now owned or enjoyed by them or which were enjoyed by their ancestors, and not heretofore conveyed, including all overflow lands, and rights to overflow lands, and all reservations and exceptions made by them or their ancestors for the use, conduct and continuation of said water power, and contained in any conveyance heretofore executed by them or any of them or their ancestors or grantors."

. At the time of this conveyance both the grist mill and the paper mill had discontinued operations and none of the water power developed by the dam and mill pond was being utilized.

In 1916 the dam washed out. At that time Herbert E. Bucklen, who continued to be the owner of the real estate now owned by appellee and the excepted and reserved rights, described in the 1896 deed to the water company, entered into a lease with the water company by which he leased to the water company for 20 years, at an annual rental of $600.00 per year, certain real estate, the race way and Christiana Creek water power, described as follows:

> "All the rights and privileges that the lessor now has or owns in and to the mill pond located in, connected to and forming a portion of Christiana Creek, including all rights, privileges, easements and prescriptions that the lessor now owns or possesses, to use and appropriate the water flowing in said creek for power or other purposes, together with all the flowage or overflowage rights and privileges connected with, or appurtenant to, said mill pond and water power which are now vested in the lessor by any deed, judgment, record, prescription, easement or otherwise;"

By said lease it was further agreed that the water company should rebuild the dam at its own cost, except that Mr. Bucklen agreed to contribute $1,000.00 to the cost of such restoration. By the lease it was also provided that Mr. Bucklen, at his own expense, should install a sluiceway 12 feet wide at the north end of the dam.

The lessee was, by the terms of said lease, given the further right to construct and maintain on the demised real estate any structure, machinery or appliances that it might deem proper in order to utilize said water

power, and also was given the right and privilege to erect and maintain poles along the banks of said mill race for the purpose of transmitting power. The water company caused a new, reinforced concrete dam to be rebuilt at the same location and of the same height as the old dam and Mr. Bucklen caused to be built into said dam two six-foot sluiceways at the north end instead of one twelve (12) foot sluiceway as provided for in the lease. The dam is located at the southeast corner of the mill pond.

In connection with the construction of the new dam, Mr. Bucklen also replaced the east bank of the mill pond, which had been made of earth, with a reinforced concrete retaining wall built deep enough to prevent water from flowing under it from the mill pond into the water preserve of the water company lying to the east.

It also appears from the evidence that in connection with the rebuilding of the dam and the retaining wall, Mr. Bucklen installed new headgates, which could be lowered or raised, at the point where the mill race tapped the pond and that he cleaned out the mill race and constructed a new flume and installed a concrete sluiceway with removable sluice boards near the junction of the race way with the St. Joseph River.

At the time this suit was instituted there was a disagreement between the parties as to the location of the dividing line between their parcels of land but at the trial the witnesses for both parties agreed that the south end of the dam is approximately forty-five (45) feet north of the dividing line between the city's property and appellee's property.

The water company went into possession of the rights it acquired under the lease and continued to hold and use same and pay rent until it sold out to the city in

1925 and the city continued in possession and continued to use same and pay rent until the termination of the lease in 1936. In the meantime, Mr. Bucklen had died and his rights under the lease and to the real estate now owned by appellee and to the reserved rights in the real estate now owned by the city passed to trustees and since have been conveyed to the appellee herein.

While the lease above referred to was in full force and effect a hole was made by the water company or the city in the concrete retaining wall on the east side of the mill pond and a 12-inch pipe was inserted so that the water flowed continuously from the mill pond into and upon the water preserve lying to the east of the mill pond.

After the termination of the lease above referred to, appellee demanded in writing, served upon the City of Elkhart, that the pipe be removed and the opening in the wall be closed. The demand was not complied with and thereafter appellee caused the opening to be closed with concrete but appellant removed the concrete and the water has since continued to flow through the opening.

There was evidence that 4,375,000 gallons of water flow through this pipe from the mill pond to the city water preserve each 24 hours as compared with an average of 4,500,000 gallons of water pumped into the city's distribution system each 24 hours.

Water pipes were run from wells upon the water preserve across the creek near the east line of the city's property to the water company's pumping station located on the south side of the creek east of appellee's land and water was pumped through these pipes from the water preserve into the city water distribution system. Later a rock dam was constructed by the defend-

ants on these pipes which dam was raised from time to time and obstructed the flow of water in Christiana Creek and caused the water in the creek to back up below the big concrete dam.

Appellee now desires to utilize Christiana Creek water power by installing a hydro-electric plant on its own land south and east of the dam and has employed engineers to explore the possibilities and determine the water power available. Appellee's engineers testified that the flow of water from the mill pond through the 12-inch pipe on to the water preserve and the backing up of the water in the creek by the rock dam reduces the potential water power to such an extent that the proposed hydro-electric plant is not feasible unless the flow of water from the mill pond through the 12-inch pipe on to appellant's water preserve is stopped and unless the lower rock dam is removed. With the flow of water from the mill pond through the 12-inch pipe stopped and the rock dam removed the proposed hydro-electric plant would be feasible. It is true that there was conflict in the evidence on the question of feasibility under any circumstances but this court will not weigh the evidence.

Appellee claims that the city has no right to flow water from the mill pond through the 12-inch pipe on to its water preserve and that it has no right to maintain the rock dam and back the water of Christiana Creek up against the concrete dam and thereby lower the head of water at the dam and reduce the potential water power which appellee claims belongs exclusively to it.

Appellant claims that it has a right to tap the mill pond with its 12-inch pipe and that it has the right to maintain the rock dam in the creek at or near its pumping station.

To settle these controversies appellee filed its complaint for a declaratory judgment. The court found for the plaintiff and by its judgment declared in effect that appellee has the exclusive right to use, for water power purposes, the concrete dam and mill pond and to install on its own property machinery, equipment and facilities for the purpose of creating power, including flumes or race way over its own land from the mill pond to its installations. By said judgment the court also declared that appellant is without right to withdraw water from the mill pond by use of the 12-inch pipe through the east retaining wall or by any other means and also without right to erect or construct or maintain the rock dam on its pipes crossing Christiana Creek near its pumping station. It is from this judgment that this appeal has been taken.

The rights of the parties in and to the dam across Christiana Creek and the ponded water and to create power therefrom depend upon the construction which shall be given to the reservation language contained in the 1896 deed from Beardsley to the water company. The execution and delivery and acceptance of this deed constituted a contract between the parties thereto, and it must be construed accordingly. 26 C. J. S. § 82a, pp. 320, 321. The intent of the parties will control. *Ireland* v. *Francisco Mining Co.* (1926), 85 Ind. App. 428, 431, 151 N. E. 700. Where, as here, the language used is not entirely clear it will be construed in the light of all the surrounding facts and circumstances and the subsequent conduct of the parties in the nature of construction by themselves in an effort to arrive at the true intent. 26 C. J. S. § 92, p. 344, and numerous cases cited in note 48. At the time the deed was executed the grantor was using power from the dam and mill pond for the operation of a grist mill and

a paper mill. It was natural therefore that he would want to retain that water power. On the other hand, the grantee was at the time of the deed, engaged only in the distribution of water to citizens of the City of Elkhart and the real estate conveyed was, without interference with the pond or the water power, a natural water preserve especially well suited to further the water company's purpose. · While the language of the reservation is not as definite as it might be it is difficult to see what purpose was to be served by it if not to save for grantor the water power of Christiana Creek which was made possible by the dam and mill pond and which he was at the time using to operate a grist mill and a paper mill.

The lease made in 1916 with the water company seems to recognize that control of the dam and the mill pond and the potential water power represented by the same did not belong to the water company and did belong to appellee's predecessor in title. No other position is consistent with the language used in the lease. Water power is specifically referred to and the right to use same is specifically given for the term of the lease to appellant's predecessor in title. The language used is not consistent with the theory that the water company already possessed such right under the 1896 conveyance.

Where by an exception or reservation in a grant a right is reserved in the grantor, that reservation carries with it all the usual and necessary incidents and appurtenances of such right. It carries with it all that is necessary for the beneficial use and full enjoyment of such reserved right. *Elsea* v. *Adkins* (1904), 164 Ind. 580, 583, 74 N. E. 242; *Indianapolis, Decatur, etc., Ry. Co.* v. *The First National Bank, etc.* (1892), 134 Ind. 127, 131, 33 N. E. 679; *Waldorf* v. *The*

*Elkhart & Western Railroad Company* (1895), 13 Ind. App. 134, 136.

By the reservation and exception contained in the 1896 deed grantor retained the right to keep and maintain the mill pond and dam. The use of such dam and mill pond for power purposes was an incident and an appurtenance of the dam and pond. They were actually being used for power purposes when the conveyance was made.

In the *Waldorf* v. *Elkhart & Western Railroad Company, supra,* the following language from *Allen* v. *Scott* (1838), 21 Pick. 25, was quoted and adopted:

"When property is granted all that is necessary to the enjoyment of the grant is impliedly granted as incident to the express grant; and the same rule of construction applies to an exception in a grant."

For the grantor in the 1896 deed to enjoy the substance of the reservation therein contained he must have the use of the dam and the pond and ponded water for power purposes without damaging interference by the grantee. That right was a necessary incident to the express reservation if grantor was to enjoy any benefits from the express reservation.

The 12-inch pipe and the rock dam, under substantial evidence in this case, constituted damaging interference with appellee's use of the dam and mill pond for power purposes and therefore constitute a wrongful invasion of appellee's rights under the reservation in the 1896 deed.

It may be admitted, as contended by appellants, that the owner of water power does not have any property

in the *corpus* of the water, but he does have the right to use the water for the generation of power. Others may also use it if such use does not injure or decrease the power to which the owner of the power is entitled. Judge Elliott in *Bass* v. *The City of Fort Wayne* (1889), 121 Ind. 389, 394, 23 N. E. 259, adopts and quotes the following language from an early Pennsylvania case:

> "Now, a grant of water-power is not a grant of the water for anything else than the propulsion of the machinery; and it consequently does not exclude the use of it by anyone else, in a way which does not injure or decrease the power. It is not a grant of the property in the *corpus* of the water as a chattel."

Conversely it may be said that the use of water by anyone other than the owner of the water power in a way which *does* injure or decrease the power is excluded by the water power grant or in this case by the reservation in the 1896 deed.

If the city's use of the water did not interfere with appellee's use of it to create power appellee's rights would not be invaded and therefore it could not complain. But it was the uncontradicted evidence of witnesses on both sides that the city's use of the water did decrease the water power and there was substantial evidence that the city's use not only decreased the power available to appellee but completely destroyed the feasibility of utilizing same.

Appellants have cited *Russ* v. *The City of Fort Wayne, supra,* but it seems to us that the Bass case is clearly distinguishable from the case now before the court and is helpful to appellee rather than appellants.

It is the opinion of this court that the 1896 deed reserved to the grantor and his successors in title the

Christiana Creek water power, which could be made by use of the concrete dam and mill pond, free from interference by grantor and its successors in title.

Without taking into account for a moment the reservation of rights contained in the 1896 deed, the appellants would still be without right to withdraw water from the mill pond and divert it to the detriment of owners of property with riparian rights farther down stream. An upper riparian owner may not use or divert water from a stream in such a way as to destroy or render it unavailable for the use of a lower riparian proprietor. *Lowe* v. *Indiana, etc., Power Co.* (1926), 197 Ind. 430, 436, 151 N. E. 220; *Bump* v. *Sellers* (1913), 54 Ind. App. 146, 150, 102 N. E. 875; *City of Logansport* v. *Uhl* (1884), 99 Ind. 531, 539.

Appellee owns real estate down stream through which Christiana Creek flows and as such owner has riparian rights which would be invaded by appellants' withdrawal of water in substantial quantity from Christiana Creek above without returning it to the creek for the use of appellee as a lower riparian owner.

The city, in further support of its right to tap the mill pond and maintain the rock dam, refer to a deed from Mr. Beardsley and wife to the Elkhart Water Company dated June 9, 1884, conveying a strip of land approximately 100 feet east and west by 300 feet north and south and lying immediately south of the creek opposite the southeast corner of the land now owned by the city. This real estate was acquired for the purpose of installing a pumping station to be used in connection with distributing water to the people of Elkhart. At that time neither the water company nor the city had acquired the real estate now owned by the city and neither of them owned any real estate

upon Christiana Creek. This deed, after describing the particular tract of land conveyed, contained the following language:

> "Also the use and privilege of the water flowing in said creek, the same to be used for public water supply. But this shall not be construed to bind or obligate the grantors to furnish any water in said creek for the use of said grantee. . . ."

It will be observed that the water, the use and privilege of which was given by this deed, was water "flowing in said creek." The grantor in the 1884 deed was appellee's predecessor in title and at the time there was a dam where the present concrete dam is located. The present mill pond was there and the water power now involved was actually being used to operate a paper mill and a grist mill. With these facts in mind the language of the 1884 deed that said deed should "not be construed to bind or obligate the grantor to furnish any water in said creek for the use of said grantee" is significant. It shows a clear intent not to interfere with the water power rights involved in this appeal. We construe this grant to pass only the right to use water as it passed the land conveyed and it gave to the grantee no right to control the water or use the water of Christiana Creek at any other point. The rights now asserted by the appellants cannot be derived from the 1884 deed.

Appellants also contend that the appellee and its predecessors in title had abandoned their water power rights. No evidence to support this contention has been pointed out except the fact that appellee and its predecessors in title have not used the water power for a long period of time. Abandonment of such rights as were reserved in the 1896 deed is a

matter of intent and mere failure to use is not sufficient to show abandonment. *Seymour Water Company* v. *Lebline* (1924), 195 Ind. 481, 489, 144 N. E. 30, 145 N. E. 764; *Schaffner* v. *Benson* (1929), 90 Ind. 400, 420, 424, 166 N. E. 881.

Another contention of appellant is that it has a right as a riparian owner to tap the mill pond with its 12-inch pipe and withdraw huge quantities of water therefrom for distribution to the citizens of Elkhart. Even if the reservation of water power did not serve to cut off interfering riparian rights which appellant otherwise might have had appellant could not properly take water from Christiana Creek and distribute it to the citizens of Elkhart. While a riparian owner may have a right to divert and use a reasonable amount of water from a bordering stream for some purposes a waterworks company does not have a right as a riparian owner to divert water from a stream in order to make merchandise of it and distribute it to all the residents of a city. 67 C. J. § 611, pp. 1119, 1120 and cases cited in notes 34 to 40; *Van Dissel* v. *Holland-Horr Mill Co.* (1916), 91 Wash. 239, 157 P. 687, 688; *McCarter* v. *Hudson County Water Co.* (1906), 70 N. J. Eq. 695, 65 A. 489, 496, 497; *Wallace* v. *City of Winfield* (1915), 96 Kan. 35, 149 P. 693, 694; *Stock* v. *City of Hillsdale* (1909), 155 Mich. 375, 119 N. W. 435, 437; *City of Battlecreek* v. *Lake Resort Association* (1914), 181 Mich. 241, 148 N. W. 441; *Lonsdale* v. *City of Woonsocket* (1903), 25 R. I. 428, 56 A. 448.

Likewise appellants claim the right as a riparian owner, notwithstanding the reservation in the 1896 deed, to maintain the rock dam. We cannot agree that a riparian owner has a right, as such, to back up a stream and reduce the head of water

and the potential power to be derived from an up-stream dam to which another is entitled. 67 C. J. § 376, p. 927; *The Bristol Hydraulic Co.* v. *Boyer* (1879), 67 Ind. 236, 242; *Williamson* v. *Yingling* (1881), 80 Ind. 379, 385, 386, 387, 388.

The appellants have also contended that they acquired a prescriptive right to maintain the rock dam. However, in figuring their period of adverse possession they have included the period of 20 years when they were in possession of Christiana Creek water power under the lease from appellee's predecessor in title. Adverse possession, to ripen into title, must be such as would have exposed the possessor to suit at all times during the 20 years of possession upon which his prescriptive title is based. *Seymour Water Co.* v. *Lebline* (1924), 195 Ind. 481, 490, 491, 144 N. E. 30, and cases cited.

During the period of the lease lessor could not complain about what appellants did to the demised water power and that period cannot be counted in figuring prescriptive rights. Without that period the trial court could well have found against appellants upon this issue.

Appellants also contend that this was not a case for declaratory relief. We are not required to consider this question because under the statute (§ 3-1101, Burns' 1933) the trial court had jurisdiction in declaratory judgment cases and both sides asked the court to grant declaratory relief and neither can now complain that he did so.

Judgment affirmed.

NOTE.—Reported in 59 N. E. (2d) 353.