**CITY OF SPRINGFIELD, Missouri, a Municipal Corporation, Plaintiff-Respondent,**

v.

**James Walter MECUM, James David Michael, and Carl Junior Ash, Defendants-Appellants.**

No. 7765.

Springfield Court of Appeals.

Missouri.

Feb. 2, 1959.

Douglas W. Greene, Springfield, for appellant.

John B. Newberry, City Atty., Springfield, for respondent.

McDOWELL, Judge.

This appeal comes here by transfer from the Supreme Court because of lack of jurisdiction of that court to hear and determine such cause.

The appellants were found guilty by the trial court in Greene County, Missouri, and fined $10 each for violation of City Ordinance No. 1148, § 4(b) forbidding use of outboard motors in excess of six horsepower on Lake Springfield, property of the City.

We adopt the facts found by the trial court in his memorandum which are as follows:

"The City of Springfield, which owns and operates its own electrical system, recently constructed a large steam generating plant. Under the plans of construction the City acquired a large tract of land outside the city limits, through which the James Fork of the White River, commonly called the James River, flowed. A dam was built to impound the waters of the river and create a small lake by flooding a portion of the land owned by the City. The primary purpose of the impoundment was to create a large body of water to be used for cooling in the operation of the steam generating plant. However, the lake, and surrounding land, located as it is quite close to the City of Springfield, also provides an opportunity to create a large recreational area for swimming, boating, and picnicking.

"On May 27th, 1957, the City Council adopted as a general ordinance rules and regulations, as recommended by the Board of Public Utilities of the City, controlling and regulating this entire area and the lake enclosed therein. The ordinance provided that violation of any of the rules and regulations should constitute a misdemeanor and be punishable by fine in the Municipal Court of Springfield. One of the regulations

adopted prohibited the use of a motor on any boat on the lake in excess of six horse-power. * * *".

The waters of the James River impounded by Lake Springfield were public waters, the submerged area of its channel was a public highway for travel and passage by boating and wading, and fishing purposes for some seventy-five years.

Appellants stipulated that they, and each of them, did operate their boats with motors in question in violation of general Ordinance No. 1148, which became effective May 27, 1957, and was in effect on July 6, 1957. They further stipulated that the dam, creating the lake in question, was constructed by the city under Section 236.010 RSMo 1949, V.A.M.S. Defendants were tried and found guilty in the City Court and took their statutory appeal to the Circuit Court where the cause was submitted to the trial Judge primarily upon an agreed statement of facts. Defendants challenged the validity of that part of the ordinance which prohibits the use of motors of oversize horse-power. They based their attack on this portion of the ordinance on two grounds. First, that the city had no power whatsoever to regulate the use of motor boats and motors on this lake, and, second, that even if the city had the power to regulate, the regulation imposed, which limits the size of the motors, is arbitrary and unreasonable.

The city relies upon the authority granted by the Legislature, Section 82.240 RSMo 1949, V.A.M.S., which provides that the city can manage, control and police lands for public use owned by the city, either within the corporate boundaries of the city or outside such corporate boundaries, and within the territorial limits of the county in which such city is located.

The issue presented for determination is the validity of General Ordinance No. 1148 regulating the use of motor boats on Lake Springfield which is on property owned by the city outside the city limits in Greene County.

The appellants are challenging the validity of that part of the ordinance § 4(B) which reads: "Limitation Motor Horse-power. The horsepower of the motor on any boat or craft shall not exceed six (6) horsepower."

Appellants contend, first, that the trial court erred in assuming that the waters in Lake Springfield are on property owned by the city, which assumption is contrary to laws of the State of Missouri and of the United States.

Under this alleged error two contentions are made:

■ 1. "The waters of the James River at Kissick, Missouri, prior to the erection of the dam which impounded the waters that are now Lake Springfield, were public waters, and the submerged area of its channel was a public highway for travel and passage by boating and wading, and the owner of the land adjacent to the river at said point could not prevent the public from fishing, wading and boating in the river at said point."

■ We agree with this statement of law. Elder v. Delcour, 364 Mo. 835, 269 S. W.2d 17, 47 A.L.R.2d 370, cited by appellants, sustains this contention and respondent, in its brief on page 6, admits this to be the law. However, the Elder case holds that the Meramec River at the point where it flows through the lands of the defendant in Dent County, is a non-navigable river as that term applies to the question of determining title and that the title to the channel or bed of the river was in the riparian owner. The facts were that the river at the point of passage through defendant's land was navigable in fact by canoes, rowboats, and other small floating craft of similar size and nature but not by larger boats and vessels. The court found that while defendant was the owner of the land in the bed of the river, yet, such lands were subject to an easement for public travel by boat and wading. So there is no merit in appellants' first contention that the trial

court erred in holding that respondent was the owner of the land on which the waters of Lake Springfield are situated.

The second contention reads: "The construction of the dam which impounded the waters of Lake Springfield was a privilege granted to use the impounded waters for a specific purpose, which privilege was subject to superior and paramount rights of the people to use the stream for public purposes, and which privilege could not be extended to regulate the public's use of the waters impounded in any manner except to protect and safeguard the waters so that they could be used for the purpose for which they were intended."

Appellants rely upon decisions in Max v. Barnard-Bolckow Drainage District, 326 Mo. 723, 32 S.W.2d 583; City of Elkhart v. Christiana Hydraulics, Inc., 223 Ind. 242, 59 N.E.2d 353; Natural Soda Products Co. v. City of Los Angeles, Cal.App., 132 P.2d 553; and State ex rel. State Game Commission v. Red River Valley Co., 51 N.M. 207, 182 P.2d 421 to support their contention.

The Max case was an action for damages by owner of a grist mill operated by water power made available by a dam lawfully erected across a non-navigable stream. Defendant Drainage District, by its plan of reclamation, straightened the river by digging and constructing ditches. The dirt from these ditches filled up the pond or lake created by the dam, reducing the water power of such grist mill.

The Court stated: "There is no language in the Mill Dam Act under which appellant's predecessor in interest acquired a permit to build a dam, which provides that the grantee in such permit shall thereafter and always have the right to the use of the natural flow of water in the river; nor can such right be inferred as a legal consequence from the language of the statute. All that was acquired by such permit was a license to build a dam subject to certain restrictions and the right to use such water as in fact and from time to time should flow down to the dam. * * * The

right so granted to construct a dam across a natural stream was not indefeasible, but was in legal effect subject at all times to the superior and paramount right of the state in the exercise of its police power for the protection of the public health and the promotion of the public welfare to use such stream for public purposes, as in this instance, the drainage of wet and overflowed lands." [326 Mo. 723, 32 S.W.2d 585.]

The City of Springfield, which owns and operates its own electrical system, recently constructed a large steam generating plant. Under plans of construction it acquired a large tract of land outside the city limits, through which the James Fork of White River flows. In connection with this plan the city constructed a dam across James River under and by viture of Section 236.-010 RSMo 1949, V.A.M.S. The waters impounded by such dam covered about 308 acres of the land so acquired by the city forming a lake. The primary purpose of the impounded water was to create a lake to be used in the operation of its steam generating plant. However, the lake and the surrounding land, located close to the city, provides an opportunity to create a large recreational area for swimming, boating and picnicking. This lake, at the time of the alleged offense by the city against defendants, was being used by the citizens, men, women and children, for recreational purposes. The ordinance of the City of Springfield, which defendants are alleged to have violated, was passed to protect the safety and general welfare of its citizens in their use of said lake. There is evidence in the record to show that the waters of this lake, when used by boats with a larger than six-horsepower engine, stirred up mud and debris in said lake but we take it that the main purpose of the ordinance was for the protection of the citizens using such lake as a recreational center. The Max case, in no way, aids appellants in their contention here.

In the City of Elkhart case, a declaratory judgment action was brought by owners of a mill site to determine the city's

rights to divert or take water from the mill pond created by the erection of a dam across a public stream near the city. The court stated:

"It may be admitted, as contended by appellants, that the owner of the water power does not have any property in the corpus of the water, but he does have the right to use the water for the generation of power. Others may also use it if such use does not injure or decrease the power to which the owner of the power is entitled. * * *

" 'Now, a grant of water-power is not a grant of the water for anything else than the propulsion of the machinery; and it consequently does not exclude the use of it by anyone else in a way which does not injure or decrease the power. It is not a grant of the property in the corpus of the water as a chattel.' " [223 Ind. 242, 59 N.E.2d 357.]

There is no contention in the instant case that the city acquired the ownership of the water or that the city can prohibit its use as a highway for boating and fishing. It is the city's contention that under and by virtue of its police power granted to it by Section 82.240 RSMo 1949, V.A. M.S., the city has the right to regulate the use of the waters of Lake Springfield to protect the lives, safety and welfare of its citizens using said lake as a recreational center. This section reads:

"It shall be lawful for any such city to make provision in its charter, or by amendment thereof, to acquire and hold by gift, devise, purchase or by the exercise of the power of eminent domain by condemnation proceedings, lands for public use, either within the corporate boundaries of such city or outside of such corporate boundaries, and within the territorial limits of the county in which such city may be situated, for public parks, * * * or for any other public purpose, and to provide for managing, controlling and policing the same."

Under the provisions of this section of the statute we think the city was vested with power to police the lands in question acquired for a public purpose.

The Natural Soda Products case involves a damage action against the City of Los Angeles for failing to divert waters from the Owens River where it had formerly erected a dam and taken the waters for its own use and, later, permitted the waters to flow into Owens Lake damaging plaintiff's property. The court held that the city owned no water in the reservoir by damming up the river but only gained a right to use the waters for beneficial purposes.

The State of New Mexico case is of no value because it was decided under a special provision of the New Mexico Constitution. However, it followed the same law as declared in the other cases.

We cannot agree with appellants' contention under this alleged error.

It is further contended under this alleged error that the construction of the dam impounding the waters of the James River was an exercise by the City of a private function and, as such, the city assumes responsibilities and was granted the same privileges as a private person or private corporations operating waterworks or electric generating facilities.

In Lockhart v. Kansas City, 351 Mo. 1218, 175 S.W.2d 814, it was held that waterworks and electric light plants operated by cities for the purpose of supplying services to individuals are operated in the cities' private capacity and that the responsibilities assumed by the cities undertaking to run such electric light plants includes liability to their employees in such plants for injury caused by the cities' negligence.

There is no contention here made that if an employee of the city had been injured in operating the generating plant, the city wouldn't be liable. We find that this contention in no way touches the issue before the court.

Under allegation of error No. II, appellants state: "The Court erred when it based its judgment on the assumption that if the City had the power to regulate and police the waters of Lake Springfield, it would have the power to prohibit the use of outboard motors on the lake".

■ Under this alleged error appellants state, first, "Any reasonable doubt as to whether or not a city has been delegated a certain power should be resolved against the city".

With this statement of law we agree. In Arkansas-Missouri Power Corporation v. City of Kennett, 348 Mo. 1108, 156 S.W. 2d 913, 914 [4], it was stated "that since a municipal corporation is a mere creature of the state and not in itself sovereign, it can exercise only such powers as have been specifically conferred upon it by special charter or general law and either in express terms or by reasonable implication". State ex rel. Jack Frost Abattoirs, Inc. v. Steinbach, Mo.App., 274 S.W.2d 588, 590 [1–2]; City of Meadville v. Caselman, 240 Mo.App. 1220, 227 S.W.2d 77, 79 [1–2]; Ex parte Williams, 345 Mo. 1121, 139 S.W. 2d 485, 488.

The next contention under this alleged error is that: "Statutes or ordinances granting a city the right to regulate do not automatically carry with them the right to prohibit."

Much authority is cited under this alleged error but since there is no issue of prohibiting the use of the waters of Lake Springfield to the public as a highway, we will not discuss the authorities cited.

Appellants next contend that sub-section of the ordinance in question is unreasonable, ultra vires and void.

It would seem that the question of unreasonableness is the only real issue involved. We might unite this alleged error with allegation of error No. III, which contends that the trial court erred in holding that it could not substitute its judgment for that of the City Council in determining the unreasonableness of the ordinance.

To sustain this alleged error appellants cite City of Springfield v. Smith, 322 Mo. 1129, 19 S.W.2d 1. The question presented was whether or not the ordinance was a special or general ordinance. Of course the Constitution prohibits the passing of a special law. It must be a general law applicable to all who are similarly situated. That question is not involved in the case at bar. Under the stipulated facts the ordinance was a general ordinance applying to all similarly situated.

■ We agree with the finding of the trial court. The propriety, wisdom, and expediency of legislation enacted in pursuance of the police power is exclusively a matter for the Legislature. It is a governmental function. Star Square Auto Supply Co. v. Gerk, 325 Mo. 968, 30 S.W. 2d 447, 462 [14–16].

■ From its very nature the police power is a power to be exercised within wide limits of legislative discretion and if a statute appears to be within the apparent scope of this power the courts will not inquire into its wisdom and policy, or undertake to substitute their discretion for that of the legislature. Poole & Creber Market Co. v. Breshears, 343 Mo. 1133, 125 S.W.2d 23, 27.

■ The exercise of its police power by the state or the city can only be declared improper or invalid when rules and regulations imposed thereunder can be said to be unreasonable. State ex rel. Vogt v. Reynolds, 295 Mo. 375, 244 S.W. 929, 934.

■ Further, the burden to show the unreasonableness of the regulation of the ordinance in question was upon ·the one asserting the ordinance's invalidity. Passler v. Johnson, Mo.Sup., 304 S.W.2d 903, 908.

■ We hold that the determination of the reasonableness of the regulation is one

for the City Council as a legislative act, and, under the stipulated facts, the trial court did not err in its judgment.

The law governing the issues in this case is properly declared in Tietjens v. City of St. Louis, 359 Mo. 439, 222 S.W.2d 70, 73 [8], in which Judge Douglas stated:

"In its relations with cities the state retains control to a great extent over the governmental functions of a city. Exercise of the police power is a governmental function, the control of which remains in the state. A city has no inherent police power. Its authority to exercise such power within a particular field must come from a specific delegation by the state or in certain cases from the express or fairly implied grant of powers of its charter."

In the instant case the ordinance in issue was an exercise by the City of Springfield of governmental power which could only be exercised under its police power, which power must come from specific delegation by the State or implied grant of powers in the city charter. We find that the police power, under which the city passed the ordinance in question, was authorized by Section 82.240 RSMo 1949, V.A.M.S., giving the city power to act in the particular field covered by the ordinance; that the ordinance was a reasonable exercise of the police power.

Judgment of the trial court affirmed.

RUARK, J., concurs.

STONE, P. J., not sitting.